## ANN PASSMORE v. ESTATE OF JOHN B. PASSMORE.

[See 50 Mich. 626; 54 Mich. 237.]

*Husband and wife—Claim of widow against estate on note claimed to have been paid—Fullest inquiry allowed into property, family, and business surroundings of parties—Evidence—Of offers of husband or estate to settle with claimant, immaterial unless note is shown to have been included—Memorandum-book used by witness to fix dates—If genuine may be submitted to the jury—Private memory of old dates and affairs much less valuable as evidence—Expert testimony—Not competent to show whether leaves detached, and refastened in a book, belong thereto—Jury can determine this from an examination of book, as well as any one—Marriage certificate—Statement of age of parties, not made evidence by any statute—Question of its effect as an estoppel, not decided.*

1. In a case where a widow seeks to recover against her husband's estate on a note payable to a son of decedent, or bearer, but which she claims as her property, the son also claiming it, and that it was paid and surrendered *before* maturity (see opinion for full statement of facts), it was proper to allow the fullest inquiry into the property, family, and business surroundings of both parties, and their relations of amity and discord.

   The wife's means of lending, and the husband's necessity or lack of necessity for borrowing, are important; also, his means of paying, and the probability or improbability of her allowing a note honestly due to run on indefinitely when the parties were in litigation, could not fail to throw some light on the case; and the extent of such litigation, as also the relative age and conduct of the litigants, was equally relevant.

2. In such a case, evidence of offers on the *part* of the husband, while living, or of his estate, to settle with claimant, is immaterial as tending to show a recognition of her present claim as a valid one, unless such claim was included in the proposed settlement.

3. A son of decedent, who testified on cross-examination that he informed his father, some time before his death, that claimant professed to hold the note in question against him, and was further asked if he did not authorize a third party to attempt a settlement with her in behalf of his father, was allowed on re-direct examination to state his father's denial of the ownership by claimant of the note when he informed him of her claim.

   *Held*, that this was in the direct line of the inquiry, and relevant to the question whether the father authorized a settlement based on such claim.

4. Where witnesses fix dates and other circumstances by what they claim to be contemporaneous entries in a diary and pass-book, such books, if genuine, are very reliable data, and may be received, and examined by the jury. The objection that there might possibly be some other prejudicial *matter* in them is of no importance where there is an opportunity to see and exclude such matter, if it exists, and the jury is carefully instructed to look at nothing else but the entries testified to.

5. Private memory of old dates and affairs, especially when of no great personal importance, is much less reliable than memoranda made when there was no temptation to falsify them.

6. A jury can determine as well as anybody else whether leaves that have been detached, and refastened in a book submitted to their inspection, belong to the book or not, or were likely to have become loosened in a given time; and expert testimony is useless in helping, and cannot be used in preventing, a jury from drawing conclusions for themselves from every-day appearances open to the judgment of any intelligent observer.

7. Where a son testifies to circumstances indicating that he was occupied in his mother's house familiarly and intimately, it is competent to show the contrary.

8. There is nothing in the law making the statement of the *age* of the parties in a marriage certificate evidence of that fact.

Error to Saginaw. (Gage, J.) Argued February 19, 1886. Decided April 8, 1886.

Appeal from the disallowance by the probate court of Genesee county, of plaintiffs claim against the estate of John B. Passmore. Claimant brings error. Affirmed. The facts are stated in the opinion.

*William H. Sweet and William A. Clark*, for appellant:

The declarations of a debtor (living or dead) in his own behalf are hearsay and incompetent evidence: 1 Greenl. Ev. §§ 98–124, 13th Ed.

The entries in the diary and pass-book were hearsay, and it was error to submit them to the jury for examination, as they might contain other entries that would improperly influence the jury: *Rupell v. H. R. R. R.*, 17 N. Y. 134; *Robertson v. Lynch*, 18 John. 451; *Feeter v. Heath*, 11 Wend. 477–485; *Lawrence v. Barker*, 5 Id. 301; *Lightner v. Wike*, 4 S. & R. 203; *Smith v. Lane*, 12 S. & R. 87.

The marriage certificate was an official statement of what the officer was required by the statute to learn officially from the parties, by an examination on oath, hence was legitimate proof of the age certified to, and its exclusion to show age of decedent was error : How. Stat. § 6216–6222 ; *Bonker v. People*, 37 Mich. 4–10.

The rejection of the testimony of an expert—a book-binder —as to the probability of the leaves in the diary becoming detached, etc., was error (see head note 6) : Best's Poss. Pr. Ev. 346 ; 1 Phil. Ev. Vol. 1, page 654, § 4, Chap. 10.

*Geo. H. Durand,* for defendant :

The diary was properly admitted in evidence : *Sisson v. Cleveland & Toledo R. R. Co.*, 14 Mich. 489–497 ; *Stewart v. People*, 23 Id. 63 ; *De Armond v. Neasmith*, 32 Id. 231 ; *Duncan v. Seeley*, 34 Id. 369 ; *Mason v. Phelps*, 48 Id. 126.

The proposed expert testimony (see head note) 6 was properly rejected : *Pierce v. Pierce*, 38 Mich. 412. The opinion of an expert is inadmissible where the subject is one of general observation and experience, or is upon a question upon which the court or jury can themselves decide upon the facts : Lawson on Ex. & Op. Ev. 203–206.

The greatest liberality in the admission of testimony should be allowed in a case like this : *Cook v. Perry.* 43 Mich. 623 ; *Fury v. Strohecker*, 44 Id. 337 ; *Dibble v. Nash*, 47 Id. 591 ; *Daniels v. Dayton*, 49 Id. 137 ; *Passmore v. Passmore*, 50 Id. 626 ; *Gutsch v. Pittsley*, 51 Id. 566.

CAMPBELL, C. J. Claimant comes into this Court a second time to ask a new trial of the controversy in which the jury has, as before, found against her. The errors relied on relate mainly to questions of evidence.

In 1870 claimant, then keeping an inn at Flushing, Genesee county, and being a widow between 40 and 50 years old, married the deceased, John B. Passmore, a farmer of nearly 70, living with adult children on a farm in Clayton, and owning farms and personalty. They did not live together until some time in the latter part of 1870, the marriage having been August 17, 1870. In December he went to stay with her in Flushing, where they continued together between one and two years, and afterwards lived apart. Between the

separation and his death in January, 1882, their relations were more or less hostile, including two divorce suits and several property litigations, in none of which was any reference made, so far as the record shows, to the claim now in suit, although there was an assertion of it some time before his death.

The note on which recovery is now sought is one for $400 and interest, dated September 5, 1870, and payable December 1, 1870, to Lewis Passmore or bearer. Lewis Passmore is a son of decedent, and testifies that the note was given to him, and was paid and delivered back before maturity. Plaintiff claims that it was given directly to her, and never paid. She also relies on the payment of a small amount on two days of 1876, to take the case out of the bar of the statute of limitations. No proof was made except of the payment on September 23, 1876, of $20. A payment which she claims was made in August, 1876, of $25, appears to be dated August, 1871, but there is no proof when, if at all, it was really made.

The death of Mr. Passmore, and the disability, as a witness, of claimant, made it necessary to resort to such other testimony as was accessible. The testimony of claimant's daughter, Libbie Saunders, on which the whole case of claimant substantially rests, both as to its origin and its renewal by part payment, is inconsistent with Lewis Passmore's testimony and that of other witnesses cognizant of its origin, and it became a question which witnesses should be regarded as most worthy of credit. The circumstances of the parties and their resources became of importance, not only upon the original probabilities of the borrowing, if money was borrowed, as Miss Saunders says it was, but upon the reason, if any, why in their long dissensions no attempt was made seasonably to collect a note which, if genuine, was always collectible.

The defense claimed that the note was a gift made by father to son in distributing property among his children, and that money and means to pay it had been raised shortly after its date, and while the old man was living on his farm, by sale

of stock and personal property which he did not care to keep longer.

. There are 32 assignments of error, which depend on a very few considerations, and may be dealt with in classes.

We think it was proper to allow the fullest inquiry into the property, family, and business surroundings of both parties, and their relations of amity and discord.   Her means of lending, and his necessity or lack of necessity for borrowing, were important.   His means of paying, and the probability or improbability of her allowing a note honestly due to run on indefinitely when the husband and wife were litigating, could not fail to throw light on the case.   The fact and extent of that litigation became equally relevant.   So, we think, was the relative age and conduct of the parties.   This disposes of the first eight assignments, the thirteenth, seventeenth, and nineteenth.

It was not improper to shut out testimony of offers on the part of Passmore, or his estate, to come to a settlement with claimant, unless the note was included in it.   The court held that such testimony should be received if the note had anything to do with it.   But a settlement which left out the note could have no tendency to show that the note was recognized as a valid claim.   One of Passmore's sons, who was cross-examined on the subject, and testified he informed his father, some time before his death, that claimant professed to have such a note, and was further cross-examined as to whether he did not authorize a Mr. Glass to attempt a settlement, was allowed to state his father's denial of any such ownership of a note by claimant when informed of the claim.   This was in the direct line of the inquiry, and was relevant to the question whether he authorized a settlement based on it.   This covers the ninth, tenth, and twelfth assignments.

The eleventh assignment is immaterial.

Two witnesses fixed dates and some other circumstances by what they claimed to be contemporaneous entries in a diary and pass-book.   If genuine, these were very reliable *data*, and it was proper to receive them and let them be

examined. The objection that there might possibly be some other prejudicial matter in them is not of any importance, as there was opportunity to see and exclude it if such existed, and the jury had careful instruction to look at nothing else. Private memory of old affairs, especially such as are of no great personal importance, is much less reliable than *memoranda* made when there is no temptation to falsify them. This covers assignments 14, 15, 16, 20, and 21.

Neither was it error to hold that the jury could determine just as well as anybody else whether leaves that had been detached, and were fastened in a small book, belonged to it or not, or were likely to have become loosened in a given time. Expert testimony cannot be of any use in helping, and is improper to be used in preventing, a jury from drawing conclusions for themselves from every-day appearances open to the judgment of any intelligent observer.

One Richard Saunders having testified to circumstances indicating that he was occupied in his mother's house familiarly and intimately, it was competent to show that his relations were different, and that he was not employed in the house. This point, however, does not seem to be pressed in the argument.

The deposition of Mr. Miner, an attorney who was employed by Mrs. Passmore in 1879, was allowed to be read as to his employment to collect it by suit when her son came down from Midland, but not why he did not sue it at that time. Having testified to an interview with John Passmore concerning a settlement, but not being able to say that this note was included in it, this was stricken out as not contradictory of John Passmore, whose testimony it was designed to meet, and so irrelevant.

It is difficult to see how claimant could make testimony for herself out of the transactions of her attorney not brought home to the decedent, or included in any dealings known to him or authorized by him. This Court went quite as far as justice required in allowing testimony of the claimant herself of her dealings with this note before her husband's death, as some evidence that she asserted it as a valid claim against

him, and that it was not an afterthought. All of that was sufficiently admitted here. But the particular dealings between herself and her attorney could be of no consequence as to any mere delay in suing, because, if the payment on which she relied to take the case out of the statute was actually made, her suit was brought in time; and, if not so made, any delay in 1879, when the action had been barred for some years, was of no account as an excuse, and was irrelevant for any other purpose. It may also be remarked that the facts which were brought most prominently before us on the former hearing (50 Mich. 626) are largely omitted from the present record, where the essential features are quite different. Whether they appeared on the trial does not seem to be now material. The twenty-second, twenty-third, twenty-fourth, and twenty-sixth assignments cover these questions.

We see no pertinence in a purchase of goods by Libbie Saunders the day before she went to the Centennial, in 1876. There was an important dispute as to the day when she returned, because the proof of the payment. alleged to have been made in her presence September 23, 1876, depended on that date. But there was nothing dependent on the day of her departure, and we find nothing in the record to make it material.

We find no evidence of any Sunday payment, and the silence of the court was proper on that question.

There was lawful and direct testimony as to Passmore's age. There is nothing in the law which makes its statement in a marriage certificate evidence of the age of the parties, and no question of estoppel is presented, or important. The instruction on that point was correct. There is nothing further that impresses us as material.

We see no error in this record, and the case seems to have been tried with sufficient regard to the rights of claimant. The substance of the controversy was within narrow limits, and the errors assigned do not appear to us to indicate that any right has been denied. The failure of claimant's counsel to be present in person on the argument required us to .

examine the brief and record with much care, and we discover nothing which, in our opinion, ought to be allowed to disturb the conclusions of the jury.

The judgment must be affirmed.

The other Justices concurred.