## DUNLAP v. HOPKINS.

### (Circuit Court of Appeals, Seventh Circuit. June 6, 1899.)

### No. 543.

1. STATUTE OF FRAUDS—PROMISE TO ANSWER FOR DEBT OF ANOTHER—MEMORANDUM.

Under the statute of frauds of Illinois (Starr & C. Ann. St. c. 59, § 1), which provides that no action shall be brought to charge a defendant on any special promise to answer for the debt of another "unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged," a letter, written and signed by a defendant, containing an acknowledgment of a previous oral promise to guaranty a note of another, is admissible in evidence as a memorandum or note of such promise, although it does not state the consideration for the promise, nor its date; and such facts may be supplied by parol testimony.

2. WITNESS—CORROBORATION—LETTER WRITTEN TO THIRD PERSON.

A letter, written by a witness to a third person, containing a statement of a transaction to which the witness has testified as having taken place on the day on which the letter was written and dated, the correctness of the date having been testified to by the witness, is admissible in evidence as a memorandum corroborating the testimony of the witness as to the date of the transaction.

3. REVIEW—PRESUMPTION.

A letter admissible in evidence for a single purpose, and received in an action tried to the court without a jury, will be presumed to have been considered for that purpose only.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The defendant in error, being the plaintiff below, sued to recover from the defendant below the sum of $6,700, and interest thereon, being the amount of a promissory note dated April 14, 1893, executed to the plaintiff by her father, George L. Dunlap, the action being founded upon the undertaking of the defendant, Emma Blanche Dunlap, to guaranty the payment of the note. There were many pleas filed, only one of which is relied upon as a defense to the undertaking, which is that the said undertaking to pay was within the statute of frauds, which requires the agreement, or some note or memorandum of it, to be in writing. A jury being waived, the case was tried before the court, which made the following findings:

"First. That the plaintiff is, and at the time of the commencement of this action was, a citizen of the state of New York, a resident in the city of New York, and that the defendant is, and at the time of the commencement of this action was, a citizen of the state of Illinois, resident in the city of Chicago.

"Secondly. That the plaintiff is the daughter of George L. Dunlap, and that the defendant is, and since a date prior to the month of April, 1893, has been, the wife of said George L. Dunlap, and is the stepmother of the plaintiff.

"Thirdly. That on the 10th of April, 1893, the plaintiff left the city of New York to visit her father's home in said city of Chicago, bringing with her in a satchel 57 bonds of the par value of $485 each, issued by the Chicago Grain Elevator, Limited, for the purpose of selling said bonds while in Chicago.

"Fourth. That the plaintiff arrived at her father's home in Chicago, aforesaid, on the evening of the 11th of April, 1893. On the next morning, April 12, 1893, plaintiff's father came to her bedroom before plaintiff had risen from her bed, and told her, in substance, that he was in financial difficulty, and asked plaintiff to let him have certain of the bonds to tide him over his financial distress; that thereupon plaintiff said to him, in substance, that she desired to help him all she could, but that she did not think she ought to jeopardize all she had, and would talk with defendant concerning it.

"Fifth. That on the morning of the 12th of April, 1893, and before plaintiff consented that her father should have said bonds, plaintiff did talk with defendant in respect to the matter, and told the defendant, in substance, that plaintiff's father had come to plaintiff that morning, and informed her of his distressed financial condition, and had requested her to let him have some of the bonds, and that he had proposed to give her his note for the bonds, and that plaintiff thought that, as she (plaintiff) did not have much, she ought not to let him have the bonds; that thereupon the defendant, in substance, said to her: 'I will see that papa pays the note or loan. I will guaranty the loan.'

"Sixth. That thereupon the plaintiff, moved thereto by the conversation had with, and promise obtained from, the defendant, consented that her father might have some of said bonds; and that, but for such conversation and promise, the plaintiff would not have consented to let her father have such bonds.

"Seventh. That soon after the foregoing conversation and promise between plaintiff and defendant, the said George L. Dunlap obtained 20 of the said bonds, which were then of the value of $6,790, and disposed of the same for his own use and benefit, and thereafter, on the 14th of April, 1893, of his own accord, executed and delivered to said plaintiff his promissory note, of which the following is a copy:

"'Chicago, Ill., April 14, 1893.

"'One year after date, for value received, I promise to pay Ellen M. Hopkins six thousand seven hundred and ninety dollars ($6,790.00), with interest, seven per cent.                              George L. Dunlap.'

"Eighth. That shortly prior to November 17, 1893, the plaintiff wrote the defendant a letter, which was sent from New York by mail to defendant at Chicago, and which was received by defendant, and in which the plaintiff, in substance, said that defendant had guarantied the payment of the above note, and that plaintiff looked to her to attend to it. That on the 17th of November, 1893, the defendant at Chicago wrote and mailed to the plaintiff a letter which was received in New York by plaintiff in due course of mail, of which the following is a copy:

" '41 Bellevue Place, Nov. 17, 1893.

" 'Dear Minnie: Your letter came this morning, and I gave it to papa, and he said he would attend to it. He probably will do so by next week, but I want to write you frankly now about this matter, that you may do as you think best. When you loaned this, I said, in the enthusiasm of the moment, that I would see that papa paid it. As I wrote you afterwards, matters were very much worse then than I knew. Since then I have been obliged to pay out all of my money, and have just put a mortgage on Lake Geneva to pay up indebtedness that had to be paid. I cannot, therefore, see that you are paid any more than to live economically as possible to enable papa to save money to pay all his debts. Besides giving up all I have, I have given up my home, sold carriages, pictures, wine cellar, horses, and everything possible, and I hope in better times papa will be able to realize on his property, and pay his debts. He thinks he will, and I hope he may. I wrote you all this in the summer that you would come to us this fall and see for yourself, but you did not do so. What we will do I cannot tell. I only know that I have done all I can, have been humiliated to the last degree, and am absolutely penniless until Lake Geneva can be sold. I have put it on the market, and hope in the spring some one will buy it. Then, if papa can sell some of his land, he can pay off his debts. I hope before your note is due he will be able to pay it. We left our home Monday. Papa is, of course, crushed and stunned, and I try to keep him up, but I must say I have nothing cheerful to look forward to. As soon as I can get matters in shape, we will go somewhere; where I do not know. I hope Europe.

" 'Yours, as ever,                                                        Bae.'

—That in the family of the plaintiff's father, the defendant was commonly called 'Bae,' and commonly signed such name as and for her signature, and the plaintiff was in the family commonly called and addressed by the name of 'Minnie.' That the above letter was written by the defendant, and signed by her, and was intended for the plaintiff, and sent to her.

"Ninth. That there have been paid on said note the following sums only, on the dates following: December 3, 1893, $224; March 9, 1894, $208.90; November 30, 1894, $237.16.

"Plaintiff is the owner of said note, and there is now due to the plaintiff for principal and interest mentioned in said note on the said guaranty and promise of defendant, the sum of $———.

"Wherefore, the court finds the issues in this case in favor of the plaintiff and against the defendant, and assesses the plaintiff's damages against the defendant at the sum of $8,575.64."

John W. Jewett, for plaintiff in error.

William Ruger, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge, upon this statement of the case, delivered the opinion of the court.

Upon a careful review of the record and findings in the case, we are satisfied that there is no error for which the judgment can be reversed. The conclusions of law are fully supported by the findings of fact, and the findings of fact by the testimony. There were a great many assignments of error, only two or three of which have been relied upon by counsel in the argument of the case. It is contended that the court erred in admitting in evidence the letter of the defendant, Mrs. Dunlap, to the plaintiff, dated November 17, 1893. This letter was clearly competent as containing the written acknowledgment, signed by the defendant, of the contract of guaranty relied upon to take the case out of the operation of the statute of frauds set up as a plea. Of course, it does not make a complete

case, as it neither shows any consideration for the promise nor that it was made at the time of making the loan of the bonds and the giving of the note by Dunlap. But it was a necessary and competent link in the chain of testimony to show a valid guaranty. It contained a distinct acknowledgment of the promise to guaranty. And, although not made at the time the note was given, it is, under the decisions of the courts, a compliance with the requirements of the statute, as being a note or memorandum in writing signed by the party to be charged. The provision of the statute of Illinois (Starr & C. Ann. St. c. 59, § 1), relied upon by the defense is as follows:

"That no action shall be brought, whereby to charge * * * the defendant upon any special promise to answer for the debt, default or miscarriage of another person * * * unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

It will be noticed that there is no requirement that the consideration for the promise shall be expressed in writing, as is the case in some of the states. The evidence to meet the objection of want of consideration was furnished by oral testimony of Mrs. Hopkins and others of the time when the promise of guaranty was made, and by a letter of the plaintiff to her friend Miss Pond, dated Chicago, April 12th, which was also admitted in evidence against the objection of the defendant. This letter was as follows:

"Chicago, April 12th.

"My Dear Nellie: It is past twelve o'clock, and I am still sitting up, thinking over the horrors of this day. Nellie, father is on the verge of ruin. Imagine my feelings, for the dear old man is to me the idol of my life. You cannot imagine how my heart aches for him. He came to my room this morning to tell me of his fearful position financially. I could hardly realize that I could help it. He said that he must have some money at once, or ruin would overtake him. Naturally I said nothing of my bonds, which, upon my arrival last night, I gave to Bae to put in the safe, as I had told her to say nothing about them. Imagine my surprise when father said that Bae had told him I had given her some bonds to put in the safe, which I was going to sell, and that he wanted me to help him tide over some payments coming due with these bonds. It was a terrible moment. He assured me his note would be good, and all that. I said I would do what I could for him, and that I had little enough myself to do with, and determined to speak to Bae at once, and abide by her advice. So, on our way to the Fair Grounds, a little later, I spoke of my conversation with father, and that I didn't think I ought to give him my bonds if he was in such financial condition, as I was a woman, and had no way of getting more. She was very nice about it, and said: 'That will be all right. I will see papa pays you. The note will be all right. I will guaranty that.' So, Nellie, as long as she has property, and I am sure she is as good as her word, I have no cause to worry further; but poor father, I am so unhappy about it. I saw Carrie at the Fair Grounds. She is looking well. I will write to-morrow, as I am so distressed and tired to-night of my trip west, the Fair, the buildings, etc. I shall stay but a few days. My heart is full of father's troubles. The letter with the little kitten came to-day. I will keep it, and give it to little Margaret. Hope you and your cousin will enjoy the theater. Write me all about it. Don't fail to keep me posted about everything, no matter how small,—the school, the students, the receipts, the designs sold, and tell Miss Angel I will attend to the stove matter when I return.

"[Signed] Fondly yours,                                    Ellen."

The principal contest in the case on the trial, as well as in this court, seems to have been over the introduction of this last letter in

evidence. We think the court was clearly right in admitting it in evidence as corroborative of the testimony of witnesses in regard to the time when the promise was made. That was, perhaps, the most material question in the case. If the promise was made after the loan was effected and the note delivered, it would be void without a new consideration, of which there was no evidence. If made at that time, it required no new consideration. If the bonds were advanced and the loan made at the same time the promise of guaranty was made, and was the inducement to it, then no new or other consideration would be required to sustain the guaranty. Mrs. Hopkins had testified distinctly to the time, and there was plenty of evidence upon this question to support the finding of facts without the letter of April 12th. We think it clear, however, that it was properly admitted as a memorandum made by the party at the time, and now sworn to have been correctly made, in connection with the evidence of the plaintiff upon that question. So far as the question of time went, it strongly corroborates and enforces her testimony on the trial. The letter might not be evidence for any other purpose. It is not necessary here to decide that question. But as a memorandum of the time it was competent, as corroborative of her testimony, even though it might not serve to refresh her recollection; the letter, as she testifies, having been correctly dated on the day when the loan of the bonds was arranged for and the guaranty made. Insurance Cos. v. Weides, 14 Wall. 375; Burrough v. Martin, 2 Camp. 112; Burton v. Plummer, 2 Adol. & E. 343; Downer v. Rowell, 24 Vt. 343; Passmore v. Passmore's Estate, 60 Mich. 643, 27 N. W. 601; Goodnow v. Parsons, 36 Vt. 46; Cornell v. Green, 10 Serg. & R. 17. Suppose, instead of writing a letter detailing the facts to a friend, Mrs. Hopkins had made an entry of it in her note book, stating the particular place, with the day, the hour, and minute when and where the transaction took place, and on the trial had testified that the entry was correctly made. Can it be questioned that such a memorandum would be received to corroborate and enforce the testimony of the witness? But the memorandum being in the form of a letter to a friend, does not change the application of the rule. The rule and the reason for it are well stated by Mr. Justice Strong delivering the opinion of the supreme court in Insurance Cos. v. Weides, supra, as follows:

"How far papers not evidence per se, but proved to have been true statements of fact at the time they were made, are admissible, in connection with the testimony of a witness who made them, has been a frequent subject of inquiry, and it has been many times decided that they are to be received. And why should they not be? Quantities and values are retained in the memory with great difficulty. If at the time when an entry of aggregate quantities or values was made the witness knew it was correct, it is hard to see why it is not at least as reliable as is the memory of a witness."

The letter being admissible on the question of time, it was properly received, and there can be no presumption that it was considered by the court for any other purpose. City of New York v. Second Ave. Ry. Co., 102 N. Y. 572, 7 N. E. 905; Transportation Co. v. Joesting, 89 Ill. 152. Indeed, there was no occasion to consider it for any other purpose. On the question of the making of the promise

there was no need of other evidence than the plaintiff's testimony and the defendant's acknowledgment contained in her letter to the plaintiff of November 17th. But the record shows with sufficient plainness that it was received and considered as corroborative of Mrs. Hopkins' testimony in fixing the time when the guaranty was made.

The other assignments of error have been fully considered by the court, but we do not deem it essential to discuss them here. It is sufficient to say that we find no error in the record, and that the judgment of the court below is affirmed.