[No. 4020.   Decided January 4, 1902.]

LILLIAN I. CALLIHAN *et al., Appellants,* v. WASHINGTON WATER POWER COMPANY, *Respondent.*

MOTION FOR NEW TRIAL — DISCRETION OF COURT — REVIEW ON APPEAL.

The action of the trial court in refusing a motion for a new trial based upon the fact that the record in the case showed fraud in the preparation and conduct of the defense, corruption on the part of the jury, and undue influence brought to bear on them, will not be disturbed on appeal, without an affirmative showing that the court abused its discretion in aenying the motion, since the trial court is better able to interpret the actions of witnesses and jurors than an appellate court, altnough the latter may be in possession of the full testimony and record in the case.

STREET RAILWAYS — INJURY TO ALLEGED PASSENGER — EVIDENCE — CONDUCTOR'S TRIP REPORT.

In an action for damages against a street car company by a woman found lying in the street and who claimed that she was injured when alighting from a car, but who, according to the defendant's claim, had not been a passenger, the conductor's trip report showing the number of passengers on the trip the woman claimed to have been on, and that they all paid cash fares, is admissible in evidence, where the woman claimed to have paid ner fare by a transfer slip from another line, since such trip report, being made by the conductor in the regular course of duty at the end of each trip, and entered up prior to any knowledge on his part that it would prove a material fact in the case, would not fall under the rule excluding self-serving declarations.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge.   Affirmed.

*Graves & Graves,* for appellants.

*Stephens & Bunn,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—Action for damages by the appellants, Lillian I. Callihan and C. C. Callihan, for personal in-

juries alleged to have been sustained by Lillian I. Calli-
han through respondent's negligence in operating one of
its street cars in the city of Spokane.   A jury returned
a verdict for the respondent.  Appellants' motion for a
new trial was denied, and from the judgment entered
thereupon this appeal was taken.

  The complaint alleges, in substance, that Lillian I.
Callihan was a passenger on one of the street cars of
respondent in the city of Spokane, on the evening of April
28, 1900, and that, while attempting to alight from said
car at the corner of Fifth and Hatch streets, the car was
negligently started in an abrupt manner, throwing said
plaintiff to the ground, by reason of which fall she sus-
tained the injuries complained of.   The substantial de-
fense of the respondent is that the appellant Lillian I.
Callihan was not a passenger on its car at the time of the
alleged accident, and that, if she received any injuries at
that time, it was not through any fault or agency of the
company, but by reason of her own mishap or misfortune.
There is undisputed testimony of the fact that the car
stopped at Fifth and Hatch streets to let off a passenger
by the name of Chandler.   It then proceeded several
blocks to the end of the line; and, upon returning to Fifth
and Hatch streets, the motorman, Spear, saw Mrs. Calli-
han lying in the road by the side of the car line.   He
and the passengers alighted from the car, examined the
woman, and thought that she was either dead or dying.
They then got on the car, traveling two blocks, when Spear,
the conductor in charge, stopped the car, went into a doc-
tor's office near by, and telephoned what he had seen to
the police station.   On his return to the car from the doc-
tor's office he met a Mr. Koontz, told him what had oc-
curred, and asked him to go down and see to the woman.

Mr. Koontz immediately repaired to where the woman was lying, found her attempting to get up from the ground, and assisted her to arise, when the east-bound car came along and stopped, the motorman got off, and he and Mr. Koontz got her into a seat on the car. Mr. Callihan, the husband of the woman, came to the door of his house with a lamp, when he heard the car coming, went down to see what had occurred,—his wife not coming in,—and, with the assistance of Mr. Koontz, carried her to the house and got her into bed. A doctor was summoned and the patient was given necessary attention.

Error is alleged on the part of the court (1) in striking the interrogatories propounded by appellants to respondent; (2) in receiving, over appellants' objection, certain testimony; (3) in receiving in evidence, over appellants' objection, conductor Spear's trip report as to fares taken, etc.; and (4) in denying appellants' motion for a new trial. It is earnestly urged by the appellants that the court erred in denying the motion for a new trial; that the record in this case shows corruption on the part of the jury, and undue influence brought to bear on the jury, and fraud in the preparation and conduct of the defense. This was a bitterly contested case, the record showing that there was a great deal of partisan feeling exhibited in the trial of the cause on both sides; and much is said in the brief of the appellants in support of their contention that the motion for a new trial should have been granted. But from an examination of the voluminous record in this case, which comprises about one thousand pages, we are unable to conclude that this court would be justified in setting aside the verdict of the jury on the grounds urged. It is insisted by the appellants that this court would be as good a judge of whether fraud had been

perpetrated as the court below, the testimony having all been brought here; but this is not exactly true. There is a certain atmosphere surrounding the trial of every cause, that the trial court is familiar with, which enables him to better construe the actions of witnesses and jurors than this court could; and, it not appearing that the court abused its discretion in refusing the motion, its judgment will not be interfered with here.

Neither do we think that the court erred in striking the interrogatories propounded by the appellants to respondent, or that it erred in receiving the testimony objected to on pages 429 to 433 of the statement of facts.

There is, however, an assignment of error that has challenged the attention of this court, and has led to an extensive investigation of the law involved; that is, that the court erred in receiving in evidence, over the appellants' objection, the conductor's trip report as to fares taken, etc. According to Mrs. Callihan's testimony the car from which she claims to have been thrown must have been the east-bound car, leaving the end of the line—Natatorium Park—at 8:55 o'clock, and Howard and Riverside at 9:15 o'clock, in charge of Spear, conductor. She says her fare was paid with a transfer slip from a north side line. Spear, being called by the respondent, testified, as a matter of independent recollection, that he had five passengers to the corner of Howard and Riverside; that three alighted there, and that their places were, within the next few blocks, taken by three others, thus making a total of eight for the trip; that all paid cash fares; and that no transfers were taken. By his idenfification of the five who were passengers from Howard and Riverside on he excludes Mrs. Callihan from the number. He then further testified that at the end of the line he

made a written report, showing the number of passengers carried, and the fares paid,—whether cash or transfer,— and that this report was, in regular course and as was his custom, turned in to the company.   This report was then offered in evidence, and, on objection, was rejected.   The court afterwards reconsidered his ruling and admitted it. The instrument purports to show the number of passengers carried by Spear on his respective trips on April 26th and the medium in which their fares were paid, and that on the trip in question he had eight passengers, all of whom paid cash fares.   This is appellants' statement, and seems to be warranted by the record.   It is conceded that the conductor in this instance would have a right to have examined the report for the purpose of refreshing his memory, but it is alleged that, having testified independently of the memorandum, the introduction of the memorandum was equivalent to the admission of declarations previously made, which would be self-serving in their nature.   It is difficult to discover any sound reason for allowing the witness to refresh his memory from a memorandum or writing, then testify to a fact furnished by the writing, but which he could not have testified to without the aid of the writing, and then exclude the writing which was the basis of the testimony.   It would seem that, after all, the writing furnished the primary evidence in such a case.   It is not gainsaid that the conductor could have testified from the report, and that the report could have been used in the presence of the jury for the very purpose of enabling the conductor to testify to the state of facts which the report itself showed when introduced.   It is difficult to see how the introduction of the report could work a self-serving purpose greater than could be worked by it on its introduction for the purpose of refreshing the

memory of the witness.   The object of a legal investiga-
tion is the elicitation of the truth, and, to effectuate such
object, all facts are admissible in evidence which afford
reasonable inferences, or which throw any light upon the
subject matter contested.   No competent means of ascer-
taining the truth should be neglected,—much less inhib-
ited; and none are to be decreed incompetent unless such
means have been shown by reason and experience to pre-
vent or obscure the truth, instead of discovering it.   What
are the alleged objections to this testimony?   That it is
incompetent, irrelevant, immaterial, hearsay, and self-
serving.   The objections given to it at the trial were more
restricted, but we will discuss them in their fullest scope.
Its incompetency depends upon whether it is self-serving
or not.   That it is relevant and material is beyond ques-
tion, and it is equally plain that it is not hearsay; for it
is in reality the testimony of the witness himself, and not
that of another person.   Could it, under the circumstances
of this case, be self-serving?   It may be stated that the
general rule is that the previous declarations of a witness
out of court, and not sworn to, are not admissible to sus-
tain his evidence given in court.   The reason for this rule
is that such declarations are or might be self-serving, and,
as has frequently been said, make a witness's credibility
depend more upon the number of times he had repeated
the same story, than upon the truth of the story itself.
Under such a system the honest, candid litigant would be
at the mercy of a designing opponent who had industri-
ously circulated a fabrication which he conceived it would
be to his interest to swear to in court.   But when the
reason for the rule ceases, the rule itself cannot apply, and
the testimony will be admitted under the general rule
above quoted, or under what might be termed an excep-

tion to the rule.   The testimony objected to here was not a statement of a witness made previous to trial, but after the issues had been made up, and could not have been made for the ulterior purpose of strengthening testimony which he intended thereafter to offer; but it was the report of a private officer, which it was his duty, under the rules of the corporation which employed him, to make,—rules which were in existence before the accident occurred, and had been regularly complied with.   The rules themselves had no reference to the subject of this controversy.   The compliance with the rules had no such reference, and the compliance with the rules in this particular instance *could* have had no such reference, for the report was made before there was any knowledge on the part of the witness that any accident had occurred; and, even if he had known of the accident, he could not possibly have surmised that the particular question in relation to transfers would be in issue in any cause which might arise.   These circumstances clearly take the case out of the general rule, and render the testimony absolutely unobjectionable, so far as the charge of being self-serving is concerned; and, relieved of this objection, it seems to us that it is the very best testimony that could have been offered, tending to elicit the truth in regard to that particular point.   That it is pertinent and convincing testimony is testified to by the earnest argument made by counsel for appellants to show that, if error, its admission is not error without prejudice.   Indeed, so pertinent and convincing is this character of testimony in this particular case, that, if it had not been offered, the defendant might have felt that it was in danger of being subjected to a telling criticism before the jury for omitting to produce for its consideration convincing evidence resting peculiarly within its own

knowledge, the omission of which would raise the presumption, or at least a strong suspicion, that such evidence, if adduced, would operate to its prejudice.   Many cases are cited by appellants in support of the inadmissibility of this testimony, but, with few exceptions, they go only to the general proposition announced above,—that the previous declarations of a witness are inadmissible.

*Insurance Co. v. Guardiola,* 129 U. S. 642 (9 Sup. Ct. 425), holds that letters of a shipping agent to his principal are incompetent evidence, either in themselves, or in corroboration of the agent's testimony of the quality of the goods shipped, against third persons.   It is evident that testimony of this kind would fall under the objection of being self-serving, because it consisted of statements by the agents to their principals, all in the same interest, and all with reference to a transaction which they knew they were having with the purchasing parties.   The same principle is involved in cases cited from this state. That is a different proposition, entirely, from the case at bar, where the report was made without reference to, and before there could have been any thought that such testimony would ever be called for in a court of law.

The case of *Nashville, etc., Ry. Co. v. Parker,* 123 Ala. 683 (27 South. 323), is more nearly in point.   There it was decided that records made by a witness were not admissible when the facts were proved by the witness himself from direct personal knowledge, and the records were not offered for the purpose of refreshing his memory.   The case was an action against a carrier for injuries to a horse, and the witness attempted to testify that the seal on the car was not broken.   Many cases of this class do hold that, where the witness testifies independently as to a state of facts, the memorandum cannot be introduced in support

of such testimony,—a rule which we think, as before indicated, is illogical, and which is severely criticized by many of the best courts in the Union. Without especially reviewing the other cases cited by appellants, as a rule, they simply assert the general doctrine announced above.

This is the rule announced in appellants' citation from Thompson on Trials, § 571 *et seq.* But, under the head of "Recognized Exceptions to the Rule" (§ 574), Mr. Thompson says:

"There are certain recognized exceptions to the foregoing rule, as to which all the authorities agree. Thus, where the witness is charged with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist, or when motives of interest would have induced him to make a different statement from that which he actually made."

The suggestion would naturally be made in this case that the conductor, who was an employee of the company, would be prompted to testify—at least, as far as he could conscientiously—in favor of his employers. The introduction of this testimony would show that he made the similar statement at a time when the imputed motive did not exist, for there was no motive to have made an erroneous report; at least, no motive connected with this cause. Another exception to the rule is that, if a witness be impeached by proof of his having previously made statements that were in contradiction of evidence tending to show that the witness's account of the transaction was a fabrication of a recent date, it may be shown that he gave a similar account, before its effect and operation could be foreseen. It must appear from the testimony in this case that the account given in the report would

tend to show that the account given by the witness at the trial was not a fabrication of a recent date.

The case of *Robb v. Hackley,* cited by appellants from 23 Wend. 50, while holding that proof of declarations made by a witness out of court in corroboration of testimony given by him on the trial of a case is, as a general rule, inadmissible, notes the very exceptions which we have just discussed, and cites Phillips on Evidence, 308 (Cowen's ed.), where that author says that, in one point of view, a former statement by the witness appears to be admissible in confirmation of his evidence,—that is, where the counsel on the other side impute a design to misrepresent from some motive of interest or relationship; that there, indeed, in order to repel such an imputation, it might be proper to show that the witness made a similar statement at a time when the supposed motive did not exist, or when motives of interest would have prompted him to make a different statement of the facts. The court adds:

"It is agreed also by Mr. Starkie, that such evidence may, under special circumstances, be admitted; as, for instance, in contradiction of evidence tending to show that the account was a fabrication of late date, and where consequently it becomes material to show that the same account has been given before its ultimate effect and operation, arising from a change of circumstances, could have been foreseen."—

quoting Evans in his notes to Pothier, where, after speaking of the admission of declarations of the witness on former occasions to conform his statements in court, it is said:

"   .   .   .   In ordinary cases the evidence would be at least superfluous, for the assertions of a witness are to be regarded in general as true, until there is some particular reason for impeaching them as false; which reason may be repelled by circumstances showing that the motive upon

which it is supposed to have been founded, could not have had existence at the time when the previous relation was made, and which therefore repel the supposition of the fact related being an afterthought or fabrication.    He adds, if a witness speaks to facts negativing the existence of a contract, and insinuations are thrown out, that he has a near connection with the party on whose behalf he appears—that a change of market, or any other alteration of circumstances, has excited an inducement to recede from a deliberate engagement; the proof by unsuspicious testimony that a similar account was given when the contract alleged had every prospect of advantage, removes the imputation resulting from the opposite circumstance, and the testimony is placed upon the same level which it would have had, if the motive for receding from a previous intention had never had existence."

In the case there under consideration the testimony was held to be inadmissible, but the testimony sought to be admitted was a letter which the witness had written to the plaintiffs, and the court said:

"Independent of his own statement, there was no evidence that the letter was written when the transaction was recent, or that it had ever been in the hands of the plaintiffs.    It may have been prepared with direct reference to this litigation.    The case is not so strong as it would have been on proof by a third person that the witness had made similar declarations immediately after the business was transacted."

So that, of course, if the testimony might have been prepared with direct reference to the litigation, it would fall under the objection of being self-serving testimony, and was properly overruled.

In *Gates v. People,* 14 Ill. 433, the supreme court of Illinois held that the former declarations of a witness whose credibility was attacked could be given in evidence to corroborate his testimony.    The particular case was

this: The prisoner called witnesses to show that the char-acter of Devol for truth and veracity was bad, and he proved that an indictment was then pending against Devol for being accessory after the fact to the murder of Liley. The court thereupon allowed the prosecution to prove by the sheriff that Devol, on coming out of the jail, and before seeing John Gates, gave the same account of the interview with the prisoner. This testimony was objected to as in-admissible. The court said:

"There seems to be a conflict of authority upon the question, whether the former declarations of a witness whose credibility is attacked, may be given in evidence to corroborate his testimony. It will not be necessary in this case, to determine which is the better general rule. The authorities all agree that the former statements of the witness may in some instances be introduced for the purpose of sustaining his testimony; as where he is charged with testifying under the influence of some motive prompt-ing him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist, or when motives of interest would have induced him to make a different statement of facts. So in contradiction of evidence tending to show that the witness's account of the transaction was a fabrication of a recent date, it may be shown that he gave a similar ac-count before its effect and operation could be foreseen."

In *Insurance Co. v. Weide,* 9 Wall. 677, the very objec-tion is made that the testimony was inadmissible because there was independent testimony admitted. The court says:

"As to the second question, the admissibility of the evi-dence received by the court. There can be no doubt but the day-books and ledger, the entries in which were testi-fied to be correct by the persons who made them, were prop-erly admitted. They would not have been evidence *per se,*

but with the testimony accompanying them all objections were removed."

In *Insurance Co. v. Weides,* 14 Wall. 375, the court said:

"How far papers, not evidence *per se,* but proved to have been true statements of fact, at the time they were made, are admissible in connection with the testimony of a witness who made them, has been a frequent subject of inquiry, and it has many times been decided that they are to be received, and why should they not be? Quantities and values are retained in the memory with great difficulty. If at the time when an entry of aggregate quantities or values was made, the witness knew it was correct, it is hard to see why it is not at least as reliable as is the memory of the witness."

In *Curtis v. Bradley,* 65 Conn. 99 (28 L. R. A. 143, 31 Atl. 591, 48 Am. St. Rep. 177), it was held that the written statement of relevant facts is admissible in evidence on the testimony of the witness that he knew when it was made that the facts were correctly stated therein, but that he cannot now remember them. In criticizing the practice of allowing the memorandum to be testified from, but not to be admitted, the court in that case said:

"All courts concur in holding that the witness may read the statement of such paper to the jury, and that the jury may draw the conclusion that the statement so read to them is a true statement of the facts, but some courts hold that the paper is not evidence. It seems to us to be pressing the use of a legal fiction too far for a court to permit the statement made by such paper to be read as evidence, while holding that the law forbids the admission as evidence of the paper which is the original and only proof of the statement admitted. In other words, it would seem as if, in admitting the paper to be so read, the court, of necessity, admitted the paper as evidence, and therefore, by the concurrent authority of all courts, the paper is itself

admissible. . . . The paper is read by the witness, and the knowledge the witness once had of the facts stated by the paper is imputed to him as still existing, and the statement of the paper is received as the testimony of the witness, and the paper itself, the only witness capable of making the statement, is excluded. The use of such fiction in the administration of justice can rarely, if ever, be justified. It is certainly uncalled for in this instance. The principles of law invoked to justify the fiction are amply sufficient to support, indeed to demand, the admission of the document as evidence. As regards its admissibility as evidence, there is no substantial difference between this paper and any other tangible object capable of making a truthful and relevant statement."

The same might well be said of the report the admissibility of which is questioned by the appellants in this case. It is a circumstance throwing light on the mind of the jury on the question of whether or not any passenger traveling on the car on that trip had paid passage by transfer slip.

In *Dunlap v. Hopkins*, 37 C. C. A. 52 (95 Fed. 231), it was held that a letter written by a witness to a third person, containing a statement of a transaction to which the witness testified as having taken place on the day on which the letter was written and dated,—the correctness of the date having been testified to by the witness,—was admissible in evidence as a memorandum corroborating the testimony of the witness as to the date of the transaction. This case goes further than it is necessary to go to sustain the admission of the testimony in the case at bar.

In *Glaspie v. Keator*, 5 C. C. A. 474 (56 Fed. 203), where a book showing scale of timber was admitted, the court said:

"We are of the opinion that under such circumstances either of the timber estimators might properly refer to the

book for the purpose of refreshing his memory as to the opinion then formed, and to enable him to testify thereto, and that, in connection with his testimony, the book itself was properly admissible. But, even if we are wrong in this view, yet it appears to us that the admission of the book was in no wise prejudicial to the plaintiff in error. The witness who identified it had already given evidence as to its contents, and what it showed, which was not objected to. It had appeared in the course of his examination before the book was offered that it contained an entry showing that the total timber on Keator's land was 3,692,-000 feet, and the book, when offered, simply confirmed that statement, and had no tendency to show any further fact."

In *Owens v. State,* 67 Md. 307 (10 Atl. 210), the very question under discussion here, namely, that the report could not be introduced because the conductor had testified independently of it, is discussed, the court saying:

"It has been urged in argument that the entry or memorandum can only be used where the witness has no present independent recollection of the transaction referred to. But its admissibility depends upon no such distinction. If the witness swears that he made the entry or memorandum in accordance with the truth of the matter, as he knew it to exist at the time of the occurrence, whether he retains a present recollection of the facts or not, the entry or memorandum is admissible; for though he may have a present recollection (of doubtful or varying degree of certainty, it may be), independently of the memorandum, the paper is admissible as means of verification or confirmation of what he states from memory. This is the clear logical deduction from the cases cited."

In *State v. Brady,* 100 Iowa, 191 (69 N. W. 290, 36 L. R. A. 693, 62 Am. St. Rep. 560), it was held that the daily record of the sale of tickets, kept in the office of a railroad station agent, as required by a rule of the company, and containing a record of all tickets sold, and the

names of the stations to which sold, when properly authenticated, is admissible as evidence of the facts therein stated; and the court in that case quotes approvingly the criticism made in *Curtis v. Bradley, supra,* in relation to the practice by some of the courts of allowing the statement to be testified from, and then excluding it from evidence.

In *Donovan v. Boston & M. R. R. Co.,* 158 Mass. 450 (33 N. E. 583), in an action against a railroad company for injuries at a crossing, plaintiff's evidence was that he was injured near S. station at 5:02 p. m. by an incoming train, his view of which was obstructed by another train which was delivering passengers at the station. To show that no train was delivering passengers there at that time, defendant put in evidence, under objection, the entries on the telegraphic train report sheet kept in its train dispatcher's office at B., together with the testimony of the train dispatcher that the entries of the time all trains pass the several stations en route were made from dispatches received by him from the station operators. Held, that defendant's evidence was competent.

In *Bourda v. Jones,* 110 Wis. 52 (85 N. W. 671), it was held that certain inventories which had been made by the witness were properly received in evidence, when the witness testified that he knew the same were correctly made.

In *Diament v. Colloty,* 66 N. J. Law (49 Atl. 445), it was held that where slips containing reports of work done, cost of same, and amount and kind of material used, are part of a method of carrying on business, they are competent evidence in offering books and accounts of business. As sustaining the doctrine of this testimony see *St. Paul, F. & M. Ins. Co. v. Gotthelf,* 35 Neb. 351 (53 N. W. 137).

An attempt is made by the appellants in their reply brief to distinguish the cases cited by respondent, and to show that they are not consistent with each other; that sometimes the testimony is admitted on one theory, and sometimes on another. But whether the report in this case is admitted as a part of respondent's book of accounts as corroborative of Spear's testimony, or as a memorandum made in the regular course of business, it is admitted as a circumstance, and a strong and reasonable circumstance, which the jury had a right to consider, tending to show that on the night of the accident no passenger traveled on the alleged trip and car on a transfer slip. This was a pertinent issue in the case, and, under the circumstances, as it was not possible that such testimony could be self-serving, it was testimony which the defendant was entitled to, and was therefore properly admitted.

The whole cause having been submitted to the jury, and no error having been committed by the court, the judgment will be affirmed.

FULLERTON, ANDERS, HADLEY, MOUNT and WHITE, JJ., concur.