ROBERT GIBSON v. CHARLES SENEY, Appellant.

138    383
f139    386

**Practice:** LEGAL AND EQUITABLE ISSUES: TRIAL. An action for damages for false representations in the exchange of real estate with a general denial presents a law action which should be tried as such; and although a counterclaim is also filed presenting equitable issues, only, still when a trial of the law action first will dispose of the whole case refusal to transfer the cause to the equity calendar is proper.

**Evidence:** IMPROPER CROSS-EXAMINATION: PREJUDICE. Although matters are improperly gone into on cross-examination of a party which are not developed on the examination in chief, still where the evidence so elicited is entirely consistent with and in support of his contention as disclosed by the direct examination, its admission is not prejudicial; nor will the admission of evidence not properly cross-examination be construed as prejudicial, though involving a contradiction of other witnesses not yet examined, where their evidence is such as to require a response from the party so testifying.

**Evidence:** IMPEACHMENT. The time and place of declarations sought to be introduced for impeachment purposes should be fixed, so

that the witness assailed may be advised; but where the witness sought to be contradicted testifies to a statement substantially as claimed no prejudice can arise from a failure to lay the proper foundation to contradict him.

**Evidence:** MEMORANDA. The memoranda of a sale kept by a merchant in the ordinary course of his business and as a part of his system of accounts is admissible to fix the date of the sale.

**False representations:** SIMILAR STATEMENTS. Misrepresentations in the sale of property similar to those upon which a recovery is sought, after they were known to be false, are admissible on the question of intent in subsequently making them.

**False statements on exchange of property:** PERFORMANCE BY PLAINTIFF: EVIDENCE. In an action for false representations in the sale of property, the evidence is held sufficient to warrant a finding that plaintiff had performed his part of the agreement.

**Instructions:** STATEMENT OF ISSUES: VARIANCE. The false representation alleged in this action was that defendant stated that the land he sought to exchange with plaintiff extended to a railroad track, and the court in stating the issues made the same statement and as suggested by the evidence added, "the ends of the ties resting upon the land." *Held,* that as there was without dispute an intervening alley the departure of the instruction from the pleadings was immaterial.

*Appeal from Cerro Gordo District Court.*— HON. CLIFFORD P. SMITH, Judge.

THURSDAY, MAY 7, 1908.

MARY E. SENEY and Gertrude E. Heyer owned the S. ½ of lots 1 and 2 in block 29 in South Mason City, subject to a mortgage of $1,000, and, through their agents, Charles Seney and G. A. Stearns, agreed to exchange them to Robert Gibson & Son for the interest of Robert Gibson in the S. E. ¼ of section 12, in township 127 N. of range 144 in Grant county, Minn., to which he held a contract from the owner to convey upon the payment of $4,330 and the execution of four notes in the sum of $125 each to Seney and Stearns. In pursuance of the agreement, a quitclaim deed to Gibson from the fee owner of the land, together with the contract of sale

and the four notes, were deposited by the Gibsons with Geo. E. Winters, as were also the deeds of Mary E. Seney and Gertrude E. Heyer of the lots to the Gibsons, upon condition that delivery shall be made upon certain conditions which, as plaintiff alleged, have been fully performed; and he further alleged that defendants fraudulently misrepresented the boundaries of the lots to plaintiff's damage in the sum of $1,000, for which judgment was prayed. The defendants denied this, and pleaded that taxes on the Minnesota land which were to be paid had not been, and that they were to receive, to be applied on the notes, fourteen tons of anthracite coal at the market price, or the notes were to be secured by chattel mortgage on personal property of Gibson & Son. The defendants denied there had been any misrepresentation, or that Gibson & Son had been damaged, and in a counterclaim pleaded the failure and refusal of Gibson & Son to perform, and defendant's election to rescind, and prayed that the agreement be canceled and the parties be put *in statu quo.* The first part of defendant's motion to transfer the cause to the equity side of the calendar was overruled, but the second part to so transfer the counterclaim was sustained. The other plaintiffs named, Gibson & Son and C. R. Gibson, assigned their interest in the action to Robert Gibson, and the cause was submitted to the jury as against Charles Seney only. Verdict was rendered for the plaintiff, and judgment entered thereon. The defendant Seney appeals.— *Affirmed.*

*Cliggit, Rule & Keeler,* for appellant.

*J. J. Clark* and *Blythe, Markley, Rule & Smith,* for appellee.

LADD, C. J.— The issues, aside from those raised by the counterclaim, were at law, and for this reason the court rightly declined to transfer the cause to the equity side of

the calendar. The counterclaim presented equitable issues only, but these were such as are fully dis-

**1. PRACTICE: legal and equitable issues: trial.** posed of by the trial of those at law, so that a verdict rendered a hearing of the equitable issues unnecessary. As the action was at law, the court did not err in directing the trial of the issues raised by the petition and answer first.' *Morris v. Merritt,* 52 Iowa, 496; *Johnston v. Robuck,* 104 Iowa, 523; *Wilkinson v. Pritchard,* 93 Iowa, 308; *Twogood v. Allee,* 125 Iowa, 59.

II.. The plaintiffs exchanged for the lots with a view to the erection of coal sheds on them, as Seney well knew, and the charge is that he falsely represented that they ex-

**2. EVIDENCE: improper cross-examination: prejudice.** tended to the right of way of the Chicago & Northwestern Railway Company; whereas, there was an alley sixteen and one-half feet wide between them and the right of way.' The defendant Seney testified that, when the negotiations for an exchange were begun, he supposed the alley had been vacated, but had learned otherwise, and so advised both C. R. and Robert Gibson in the early part of April, 1905. The agreement of exchange was not made until May 22d, so that there was no claim by defendant but that he then acted with knowledge of the existence of the alley, nor that what he did was under the supposition that the lots extended to the railroad. Nevertheless, on cross-examination, after testifying that he had represented to Winters that the lots would be valuable owing to their proximity to the track, he was asked: "Q. Didn't you represent to him that they lay right at the edge of your lot there? (Objected to as not proper cross-examination. Overruled.) A. Not on the edge of the lot, on the edge of the alley. Didn't tell him that the lot extended right up to the track, or that in substance. Am acquainted with Wallace Williams. Q. Well, you told him about the big value that that possessed on account of its proximity to those tracks? (Objected to as incompetent, not proper cross-examination, and irrelevant. Overruled.) A. Oh, I don't know as any

great value, I told him how it laid there. I don't know whether he went down to see it or not. Q. Well, you told him that this lot extended over to the railroad track, didn't you? (Same objection, incompetent, not proper examination, and irrelevant. Overruled.) A. No, sir; I told him the alley extended to the railroad. I understood the alley had been vacated, and, of course, supposed that it would belong to the lot. Did not tell him my lot went to the ties. Did not tell him I owned right up to the railroad. I supposed that the alley went directly to the tracks." Plainly enough, this was not cross-examination of anything brought out in his direct testimony. He had not gone into the subject of his intent or purpose in pointing out the boundaries of the lots, but denied broadly that the deal was made with the understanding by the Gibsons that the lots extended to the right of way. As contended by appellee, proof of other efforts to sell for a like purpose upon representations such as alleged might be admissible, but this did not justify eliciting such proof on cross-examination when the subject-matter had not been touched in the examination in chief. But his answers were entirely consistent with his testimony in chief and in support of his contention that he knew the alley was there, but supposed it had been vacated. It was consistent with his claim, and we are unable to appreciate how defendant could have been prejudiced by the error. True, it involved a contradiction of the testimony of Winters and Williams as subsequently given, but their testimony was of a character which required some response by him, and that his explanation preceded rather than followed it, or that he had explained rather than remained silent, cannot be construed to have been prejudicial. Our conclusion is that the rulings were erroneous, but not prejudicial.

III.   One Fellows, who testified in behalf of defendant, was asked whether he had said to Potter that he was to be a witness and was going to testify that Gibson had said to him that he did not think there

3. EVIDENCE: impeachment.

was as much ground as was claimed. He answered that he did not remember so saying. Neither the time nor place of the alleged statement was fixed, and, upon asking Potter whether Fellows had so stated, the defendants objected that no proper foundation for impeachment had been laid. The objection should have been sustained, but it was not. The object in fixing the time and place of declarations introduced for impeachment purposes is to identify the occasion that witness assailed may know that intended. If this is done so that the witness understands that to which reference is made, any mere defect in the foundation may be disregarded. *State v. Gray,* 43 Or. 446 (74 Pac. 927); *State v. Cary,* 159 Ind. 504 (65 N. E. 527). Here there were no circumstances even tending to single out the occasion of the alleged talk, and the ruling was erroneous. But the error was without prejudice, for Fellows did testify, though in words different than related by Potter, but of like meaning, that Gibson had spoken to him in April, 1905, of an alley being there.

IV. The evidence was in conflict as to when the Gibsons ascertained that the lots did not extend to the right of way. Seney testified that he, with Hedges and C. R. Gibson, measured them in the forepart of April, 1905, while Gibson fixed the time as the last of July or forepart of August. The latter testified that on the day the measuring was done he purchased a tape measure of Downing at the store of the Bailey-Downing Hardware Company. Downing of that company identified a slip of paper with the name of the purchaser, of the article, price, and date penciled on it as in his handwriting, but did not remember the transaction. He testified that it was the custom of the house to make like memoranda of sale and take the data therefrom in making up its books; that the slips were then preserved, as this one had been, in packages; that he thought it correct, or it would not have been made. Thereupon the slip was introduced in evidence; objection thereto being overruled. It sufficiently appeared that the

4. EVIDENCE: memoranda.

memoranda was made by Downing, a disinterested party, in the regular course of business and as a part of his system of accounts, and that it was intended to be accurate. This showing authorized its reception in evidence as tending to fix the date of the sale. *State v. Brady,* 100 Iowa, 191; *Callihan v. Washington Water Power Co.,* 27 Wash. 154 (67 Pac. 697, 56 L. R. A. 772).

V. Williams, Winters, and some others testified, when the rebuttal evidence was introduced, that the fall or winter prior to the deal with the Gibsons, in negotiating for the

**5. FALSE REPRESENTATIONS: similar statements.** sale of the property, Seney had represented to them that the lots extended to the railroad track. If the witness Knapp is to be believed, Seney then knew that the alley lay between the lots and the track and that it had not been vacated, and, if so, the evidence of the witnesses mentioned was admissible as bearing upon his intent in making like representations, if he did, to Gibson & Son in effecting an exchange for the land. *State v. Brady,* 100 Iowa, 191; *Cox Shoe Co. v. Adams,* 105 Iowa, 402; *Zimmerman v. Brannon,* 103 Iowa, 144. The evidence was received out of order, as the court noted, but not for impeachment purposes, as argued by appellant.

VI. Appellant assumes in argument that the Gibsons had not performed their part of the agreement. The jury found, under proper instructions, that the delivery of the coal

**6. FALSE STATEMENTS ON EXCHANGE OF PROPERTY: performance by plaintiff: evidence.** was not a condition precedent to the completion of the exchange, and the only other omission alleged was the failure to pay taxes on the Minnesota land for the years 1903 and 1904. Those of 1902 were paid, and the parties seem to have proceeded on the theory that all other taxes had been paid. Stearns testified to Winters' statement that the fee owner had paid those of 1904, and Winters testified that Gibson paid the 1902 taxes, and that " that was the last part of the taxes." Moreover, Seney and Stearns caused Winters to surrender the contract of sale of the land and the quitclaim deed to the fee

owner thereof and procure from such owners the execution of a like contract to themselves. They took possession thereunder, and, in the absence of any evidence that the taxes were unpaid, the court rightly held the record such as to preclude the submission of that issue as to nonperformance to the jury. Otherwise there is no doubt as to performance by plaintiff. True, C. R. Gibson advised Winters at one time to retain the papers, but subsequently, and before this action was begun or any attempt at rescission, the Gibsons demanded the deeds to the lots and indicated to Winters that he might turn over the notes to Seney and Stearns.

VII. The petition alleges that Seney represented that the lots extended so as to lie immediately adjoining to the tracks of the railway company. In stating this claim in the

7. INSTRUCTIONS: statement of issues: variance. eighth instruction, the court added, " or that the ties of said track rested on said land." The witnesses, in testifying to the representations, had quoted Seney as saying that the lots " extended up to the railroad track; the ends of the ties resting on the land." As there was an alley sixteen and one-half feet wide intervening, we are of opinion that this departure, if such it was, from the pleadings, was wholly immaterial. The criticism of the instructions as assuming facts in issue is without foundation. The evidence was sufficient to carry the case to the jury. — Affirmed.