GLASPIE v. KEATOR et al.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1893.)

No. 195.

1. DECEIT—EVIDENCE—CONSPIRACY.

In an action for fraud and deceit alleged to have been practiced by defendant in the sale of timber lands to plaintiff, it was shown that plaintiff had authorized an agent to seek out and report on timber lands which were desirable investments, and that he bought the lands in question in reliance upon the false representations of the agent as to their value. It was also shown that defendant gave the agent options to purchase the lands at prices greatly in excess of their true value, and agreed to give him 30 per cent. of the purchase money if he sold at those prices; that this arrangement was carried out as to some of the land, and that, when plaintiff refused to purchase under one of the options, defendant himself completed the sale after the option had expired, and still paid the agent a portion of the price. It was further shown that defendant consulted an attorney as to how he could dispose of the purchase-money notes without incurring personal liability, and that he actually sold and indorsed them "without recourse," though he had no reason to doubt plaintiff's solvency. *Held,* that from this evidence the jury might infer that defendant acted in concert with the agent, and that the latter's fraud and deceit in representing the value of the lands was that of defendant as well.

2. SAME—RES GESTÆ.

Upon this state of the evidence as to collusion between defendant and the agent it is competent to show the communications passing between the agent and plaintiff in regard to the sales, and the confidential relations theretofore existing between them, as indicating the various steps taken to effect the sales, and the reliance that plaintiff placed on the agent's representations.

3. SAME.

It is also competent to show, as indicating guilty knowledge, that the agent, when he disposed of his share of the purchase-money notes received from defendant, carefully refrained from indorsing them.

4. SAME—MEMORANDA.

When two expert timber estimators, who went over the lands in question after their purchase to determine the amount of timber standing thereon, testify without objection as to the result of their observation, there is no prejudicial error in admitting the memorandum book in which they noted the results of such observations when they were made, and which simply confirm their oral statements in evidence.

5. SAME—INSTRUCTIONS—CONSPIRACY.

In such action it was proper to instruct that a conspiracy between defendant and the agent was established if the jury were satisfied that an option was given the agent under an understanding that a fraud was to be perpetrated, and that the option was to be used as one of the means of its accomplishment, and that it was so used.

6. SAME.

An instruction in such case that "a representation to the effect that the property sold contained a certain number of feet of merchantable pine lumber, accompanied by a further statement, by the party making

it, that he knew the fact stated to be true, because he had been on the land, and had sent experienced persons to examine it, is a statement of fact on account of which an action for fraud and deceit may be maintained, and not merely an expression of opinion," is correct, where the jury are further told that they must find that the party did not actually believe the facts to be as represented, or had no reasonable ground for supposing them to be so.

7. SAME—RES JUDICATA—JOINT TORT FEASOR.
Plaintiff had recovered a judgment against the agent for the amount he had received from the seller of the lands, as being a secret profit made by connivance of the latter, to which plaintiff, as principal, was entitled, and this judgment was satisfied. *Held*, that this did not operate as a satisfaction of a former judgment against the agent for damages for his deceit, and is no bar to an action for deceit against the present defendant, the seller of the lands.

8. LOGS AND LOGGING—SCALE BILLS—AUTHENTICATION.
Where the witness producing a scale bill of logs testifies that it is the original scale bill of the surveyor general, this is sufficient to entitle it to be received as "prima facie evidence of the facts therein stated," under Gen. St. Minn. 1878, c. 32, § 11, although it has not the official seal of the surveyor general attached to it, and does not show on its face that the scaler was his deputy.

9. SAME.
Where such scale bill has the following caption: "Scale of logs cut by W. G. for J. S. K. Lumber Co.,"—it is fairly to be inferred that the scaling was done at the instance of such lumber company, and the bill will be construed as containing a statement to that effect.

10. DECEIT—PLEADING—AIDER BY VERDICT.
The failure of the complaint, in an action for deceit, to show with sufficient certainty the damage sustained, is a merely technical defect, which is waived by pleading to the merits, and is cured by verdict.

In Error to the Circuit Court of the United States for the District of Minnesota.

This was an action by Jerman S. Keator and Benjamin C. Keator against John Glaspie, in which plaintiffs had judgment, and defendant brings error. Affirmed.

Statement by THAYER, District Judge:

The defendants in error (hereafter spoken of as Keator & Son) sued the plaintiff in error for fraud and deceit practiced in the sale of three tracts of pine lands situated on the St. Croix river, in the state of Minnesota, aggregating about 4,640 acres. Defendants in error are citizens of Illinois, and the plaintiff in error is a citizen of Minnesota. There were two counts in the complaint, the first relating to the purchase of a tract of land for the sum of $35,000, and the second count relating to the purchase of two other tracts for the sum of $16,000 and $18,500, respectively. The facts averred in the first count were substantially as follows: That the plaintiffs, being desirous of making an investment in pine lands in the state of Minnesota, employed one Edwin St. John as their agent to make inquiries from time to time for opportunities to make desirable purchases of standing pine timbered lands, and to advise them of the character, value, and cost of the same; that thereafter John Glaspie, being the owner of certain pine lands, and desiring to sell the same, entered into a conspiracy with Edwin St. John, who was plaintiffs' agent, with a view of defrauding the plaintiffs by effecting a sale of said lands at a sum greatly in excess of their true value; that in pursuance of said conspiracy St. John subsequently represented to the plaintiffs that he had obtained an option to purchase the said lands of Glaspie for the price of $35,000, and further represented to the plaintiffs that he (St. John) was familiar with the lands, and had caused them to be examined by competent persons with a view of buying them himself, and that in view of said examination, and his own knowledge thereof, said lands would yield 19,435,000 feet of

merchantable pine timber standing on said lands, and would cut from twenty-two to twenty-five million feet of merchantable pine logs; that St. John further exhibited to the plaintiffs what purported to be a detailed estimate made by competent persons of the timber standing on said lands, from which it appeared that they would yield the amount aforesaid of merchantable pine timber; and that St. John further advised a purchase of the lands at the price mentioned in the aforesaid option. It was further averred that the plaintiffs bought the lands for $35,000 in reliance upon said representations, and without knowledge of their falsity; that in point of fact the representations in question were false, and were known to the defendant and to St. John to be false, and were fraudulently made in pursuance of the conspiracy aforesaid; that the lands in question at no time had standing thereon more than 8,295,500 feet of merchantable pine timber, as the defendant and St. John well knew, and were not worth more than $14,500. The averments in the second count were substantially the same as in the first count, differing only as to the amount of land, quantity of timber, prices, etc. On a trial had before a jury the plaintiffs below recovered a judgment for $9,000, and the defendant below sued out a writ of error.

J. N. Castle and Edmund S. Durment, for plaintiff in error.

Jasper N. Searles, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

It is insisted, among other things, that the circuit court erred in refusing to instruct the jury to return a verdict in favor of the plaintiff in error, on the ground that he was not shown to have been guilty of any fraud or deceit. We are of the opinion that this position is untenable.

There was evidence which fully warranted the finding that Keator & Son had been induced by St. John to make the purchase of the pine lands in question, by means of the options, and by means of estimates and representations as to the amount of pine timber growing on the lands, which were at least believed to be untrue, even if they were not known to be so. And we also think that there was proof of some facts and circumstances from which a jury might legitimately infer that Glaspie, the plaintiff in error, had acted in concert with St. John, and had knowingly aided and abetted him in said scheme. In this class of cases, direct proof of a fraudulent intent or a fraudulent conspiracy is not to be expected, because such proof is rarely obtainable. Fraud is generally established by circumstances, and it very frequently happens, in cases like the one in hand, that slight circumstances will warrant important inferences. It was shown in the present case that Glaspie gave to St. John certain written options to purchase the pine lands in question at prices which were greatly in excess of their value, and that at the time of giving such options he agreed to pay back to St. John about 30 per cent. of the purchase price, if he sold the lands at the sums specified in the options. It is evident, we think, that Glaspie must have known that the lands could not be sold at the figures mentioned in the options to any one who was correctly informed of the approximate value of the lands, and

the inference is very persuasive that he must have known that St. John intended to use the options for the purpose of deceiving, or helping to deceive, purchasers. It was also shown that Glaspie approached Mr. B. C. Keator, and urged him to make the trade for the lands covered by the second option, immediately after the negotiations with St. John had terminated in a refusal to buy, and that he succeeded in effecting the second deal after St. John had failed, by making some concessions to Keator & Son as to the terms of payment. In the negotiations which culminated in the second purchase the evidence tended to show that Glaspie acted hand in hand with St. John. He was advised at once of St. John's failure to effect the sale under the second option, and immediately took up the negotiation where St. John had left off. It was proven that St. John received $7,000 of the proceeds of the second sale, although that sale was made by Glaspie after the second option had expired, and after St. John had ceased to have any apparent interest in the transaction. St. John also received $11,-000 of the proceeds of the first sale. It was further shown that Glaspie had on one occasion consulted an attorney with a view of finding out how he could dispose of the land notes which he had received from Keator & Son without incurring any personal liability, and that he actually sold and indorsed them without recourse, although he seems to have had no reason for questioning the maker's solvency. It is also worthy of notice, especially in a case of this character, that Glaspie was not called as a witness to refute any of the allegations of fraud, and that he was not sworn as a witness in a previous suit between the same parties, which had resulted in a mistrial, and in which the same charges had been preferred against him. There was proof of some other facts to which a jury might attach some importance in a suit of this nature, but we will not stop to recount them. It is sufficient to say that, in view of all of the circumstances which the record discloses, we think that it was the province of the jury to determine whether Glaspie and St. John had acted in concert, and in pursuance of a preconcerted scheme to deceive Keator & Son, and to sell the pine lands to them at a very exorbitant price.

The views last expressed will also serve to dispose of some of the exceptions that were taken by the plaintiff in error to the admission of testimony; for, if there was evidence sufficient to show that Glaspie and St. John had acted in collusion, then it was competent to prove whatever either one of them may have said or done in furtherance of the objects of the conspiracy. It was competent to show the correspondence and the telegrams which had passed between Keator & Son and St. John relative to the sale of the lands; it was competent to show the confidential relations that had previously existed between St. John and Keator & Son, and it was also competent to show that St. John had carefully refrained from indorsing his portion of the land notes when he disposed of them to the First National Bank of Stillwater. All of this evidence had a direct tendency to show the various steps that St. John had taken

to effect the sale; the reliance that Keator & Son would naturally place on whatever he said or did, as well as guilty knowledge on his part when he undertook to dispose of the land notes after the fraud was accomplished. We think, therefore, that the testimony last referred to was properly received, and that the exceptions saved in relation thereto are without merit.

Several other errors in the admission of testimony have been assigned, which upon examination prove to be either immaterial, or not well founded. We shall only notice two of the assignments last referred to, and the first of these is the error said to have been committed in admitting the "scale bill."

On the trial of the case one of the plaintiffs testified that during the winter of 1886 and 1887, after the purchase of the pine lands by Keator & Son, some timber was cut on three sections of the land by William Gowan, under a contract with the J. S. Keator Lumber Company. The witness produced the contract with Gowan under which the timber was cut, and he also produced a scale bill of the timber which he stated was the original scale bill of the surveyor general. The bill of exceptions thereafter recites, in substance, that the plaintiff proved by other witnesses who went over the lands, and examined them, in the winter of 1888 and 1889, the estimated amount of all the timber at that time standing on all of the lands which had been purchased by Keator & Son, including the three sections on which the cutting had been done in the winter of 1886 and 1887. The bill of exceptions further recites that on the three sections last referred to the timber estimators found many logs lying that had not been removed, and many felled trees that had been ruined in cutting; but the total amount of such logs and ruined timber was not stated by them, or estimated. Thereupon, and with a view of showing the amount of timber on the three sections aforesaid at the date of their purchase, the plaintiffs offered the surveyor general's scale bill, above referred to, and also the Gowan contract, and the same were admitted. The scale bill is as follows:

Scale of logs cut by William Gowan
for J. S. Keator Lumber Co.,
on Kettle River, winter of 1886 and '87.

C. T. Goodrich, Scaler.

23,952 logs

2,860,560 feet.

Per Yates.

A. C. Hospes, Sur. Gen'l.

Stillwater, Minn., March 3d, 1887.

Scaling, $143.05.

| 7,816 logs. | 930,300 | 18–22 |
| 14,367 " | 1,665,300 | 12–16 |
| 1,769 " | 264,960 | 2 lengths. |
| 23,952 | 2,860,560 | |

The specific objections made to the scale bill (and we can consider no others) are as follows: First, that it does not state at whose request the logs were scaled; second, that it does not mention any scale mark; third, that it does not state when the scale

bill was made; fourth, that it does not show by whom it was made; and, fifth, that it does not show that the scaler was the surveyor general, or his deputy. We remark, first, that the second, third, and fourth of these objections are obviously untenable. The scale bill shows a sufficient "scale mark." It also shows by whom it was made, and when made. We think that the fifth objection to the scale bill is answered and overcome by the evidence of the witness who produced it, who testified, in substance, and without objection, that it was the original scale bill of the surveyor general. This language implies that the signature of the surveyor general is genuine, and that the scaling was done under his authority by a person duly authorized. The Minnesota statute making scale bills issued by the surveyor general "prima facie evidence of the facts therein stated" does not, in terms, require the official seal of the surveyor general's office to be attached thereto. Neither does it require the scale bill to show on its face that the scaler was a deputy of the surveyor general. Vide § 11, c. 32, Gen. St. Minn. 1878. As the necessities of business require such instruments to be executed with great frequency, and in many places remote from the main office of the surveyor general, it was probably not intended that the official seal of that officer should be attached to such instruments; and we think that their authenticity, when no seal seal is affixed, may be established by parol, as was done in the present case, without objection. We are also of the opinion that the scale bill shows with sufficient certainty for whom the scaling was done, to satisfy the requirements of the statute, and that the first objection above mentioned is not well made. It may be fairly inferred from the caption of the bill that the scaling was done at the instance of the J. S. Keator Lumber Company; and the bill, we think, should be construed as containing that statement, in view of the fact that such documents are not drawn by persons of whom great precision in the use of language may be expected. And finally we remark, with reference to the scale bill, that it is quite as full and formal in its recitals as the scale bill referred to in Clark v. Lumber Co., 34 Minn. 289, 25 N. W. Rep. 628, which was held to be competent evidence under the Minnesota statute. It is hardly necessary to add that we are bound, in any event, to give the scale bill such weight as is would be entitled to in the courts of the state.

The second assignment which deserves notice has reference to the action of the lower court in admitting a certain memorandum book showing the estimated amount of timber standing on some of the pine lands in question in the winter of 1888 and 1889, when they were examined. The bill of exceptions shows that two expert timber estimators went over the lands together for the purpose of estimating with the eye the amount of lumber that they would produce. One of these men gave his special attention to the number of trees; the other, to the size of the trees, and the amount of lumber they would be likely to yield. At the conclusion of each day's labor they conferred together, and made a memorandum in two books of the amount of lum-

ber which the lands examined during the day, in their opinion, would probably produce. The memorandum books were alike in all respects, and were made at the same time, in the presence of both men,—one calling off the figures, and the other acting as scribe. It appears that this was the usual method of making such estimates; that estimates thus made by persons skilled in the business are approximately correct, and are such as are usually relied and acted upon. One of the timber estimators testified to the facts aforesaid, and identified one of the memorandum books which was produced. He was allowed to testify, without objection, that he had summed up the total amount of the timber found on the land, as shown by the memorandum book made by himself and his companion; that the total amount of timber found on Keator's land, as stated on the first page of the book, was correct; and that the amount so stated was 3,692,000 feet. Thereafter the memorandum book was offered and admitted in connection with the testimony of the witness who had identified it. The book was objected to as being "irrelevant, incompetent, and immaterial."

We remark, first, with reference to the memorandum, that it was merely a memorandum of an opinion formed by the timber estimators of the amount of lumber that the land would yield. It was not a record of actual measurements, or of other matters of fact, but simply showed the result of observations made with the eye, in which result both men had concurred on the day the visual survey was made. We are of the opinion that under such circumstances either of the timber estimators might properly refer to the book for the purpose of refreshing his memory as to the opinion then formed, and to enable him to testify thereto, and that, in connection with his testimony, the book itself was properly admissible. But, even if we are wrong in this view, yet it appears to us that the admission of the book was in no wise prejudicial to the plaintiff in error. The witness who identified it had already given evidence as to its contents, and what it showed, which was not objected to. It had appeared in the course of his examination before the book was offered that it contained an entry showing that the total timber on Keator's land was 3,692,000 feet, and the book, when offered, simply confirmed that statement, and had no tendency to show any further fact. It is suggested that the book contained estimates with reference to timber on some lands other than those which the timber estimators had examined. But as this fact was not suggested to the circuit court, and as the book was not objected to on that ground, we can attach no importance to that suggestion. No error was committed in admitting the book, which would justify a reversal.

We have next to notice some exceptions which were taken to the charge, and these may be divided into two classes, namely, those which relate to portions of the charge in which the trial court appears to have indulged in some general comments on certain features of the case and the testimony, and those exceptions which relate to other parts of the charge, that are sup-

posed to contain erroneous declarations of law. The class of exceptions first referred to are without merit, for the reason that in its comments on the case and the testimony the trial court did not exceed its discretionary powers. This remark is applicable to those portions of the charge which are quoted in the 15th, 17th, 19th, and 20th paragraphs of the assignment of errors. In those extracts no specific directions were given to the jury concerning any question of law, and, in our judgment, nothing therein contained is of sufficient importance to warrant a reversal. The following legal propositions are stated, in substance, in other portions of the charge, which are alleged to be erroneous: First, that a conspiracy between Glaspie and St. John was established if the jury were satisfied that an option was given to St. John under an understanding that a fraud was to be perpetrated, and that the option was to be used as one of the means by which the fraud was to be accomplished, and that it was so used; second, that a representation to the effect that the property sold contained so many million feet of merchantable pine lumber, accompanied by the further statement of the person making it, that he knew the fact stated to be true because he had been on the land, and had sent experienced persons to examine it, was a statement of a fact, on account of which an action for fraud and deceit might be maintained, and was not merely an expression of an opinion. The first of these instructions declared a correct proposition of law; and no doubt can be entertained of the propriety of the second declaration, in view of the fact that the jury were further advised that, in order to hold a person liable as for a fraud in making such a representation, they must be satisfied that he did not actually believe the facts to be as represented, or that he had no reasonable grounds for supposing them to be as represented. In view of the context we discover no error in this paragraph of the charge. Humphrey v. Merriam, 32 Minn. 197, 20 N. W. Rep. 138; Savage v. Stevens, 126 Mass. 207; Bennett v. Judson, 21 N. Y. 238; Buford v. Caldwell, 3 Mo. 477, 480; Barnes v. Railway Co., 54 Fed. Rep. 87.

It is further contended that the circuit court erred in instructing the jury that the case in hand was not barred by a previous recovery in an action by Keator & Son against St. John. The merits of this contention can be best tested by a brief statement of the facts upon which the defense was based. Keator & Son first brought an action against St. John to recover damages for the same fraud and deceit that is complained of in the case at bar, and in such suit recovered a judgment for $5,000, which judgment has not been satisfied. In the course of the trial of the latter suit for fraud and deceit, Keator & Son discovered that St. John had received $18,000 from Glaspie of the sum which they had paid for the pine lands. They thereupon brought an action against St. John for the latter sum, and recovered the amount sued for, with interest, which judgment has been paid. The last-mentioned action was brought and maintained solely upon the ground that St. John

was their agent in negotiating the purchase of the pine lands, and that the profit which he had secretly made in that transaction, through connivance with Glaspie, belonged to his principals. In stating their damages in the present action the plaintiffs below have given credit for the amount of the second judgment which was recovered against St. John, and was by him paid. It is now insisted that the payment of the second judgment against St. John, for $18,000 and interest, operated to satisfy the first judgment against him, for $5,000, in the action for fraud and deceit, and that the satisfaction of the latter judgment bars a recovery against Glaspie in the present action.

We are of the opinion that the circuit court properly directed the jury to disregard the plea of a former recovery, for the reason that the cause of action sued upon in the second suit against St. John was totally unlike the cause of action in the first suit, and totally unlike the cause of action in the suit at bar. There might have been a recovery against St. John in the second action even though no misrepresentations had been made by him as to the quantity of timber that the pine lands would yield, and the evidence which was sufficient to warrant a recovery in the second suit was utterly insufficient to justify a verdict in the first action. Furthermore, the damages recoverable in the respective suits were essentially different. These considerations warrant the conclusion that the payment of the second judgment against St. John did not operate to satisfy the first judgment for fraud and deceit, as was practically held by Mr. Justice Miller in Keator v. St. John, 42 Fed. Rep. 585.

The verdict of the jury in the first action brought against St. John is no evidence in this suit of the amount of damage which Keator & Son sustained in consequence of the alleged fraud, and nothing short of a voluntary acceptance of the damages assessed by the first jury, can bar Keator & Son of their right to recover as against Glaspie, the other joint tort feasor, the full amount of the damages which they may be able to establish in a suit brought against him. We think that the collection of the judgment recovered in the second suit against St. John, founded, as that suit was, upon an entirely different cause of action, cannot be regarded as a voluntary acceptance of the damages assessed in the first action.

We have not hitherto noticed, but we have not overlooked, the contention that the court erred in overruling the oral demurrer to the complaint, which was made after the jury was called and sworn, but before any testimony was heard. The demurrer seems to have been based on the ground that the complaint was defective in not showing with sufficient certainty that any damage was sustained in consequence of the alleged deceit. The point is untenable. The complaint averred generally, in the concluding paragraph, that damages had been sustained in a certain sum, which was all that the pleader was required to aver. But even if the complaint had been defective, as supposed, it was merely

a technical defect, which was waived by pleading to the merits, and was cured by the verdict.

Finding no material error in the record, the judgment of the circuit court must be affirmed.