GEORGE ADAMS & FREDERICK CO. v. SOUTH OMAHA NAT. BANK
OF SOUTH OMAHA, NEB.

(Circuit Court of Appeals, Eighth Circuit.    April 22, 1903.)

No. 1,821.

1. PLEADING — SUFFICIENCY OF PETITION — OBJECTION TO INTRODUCTION OF
EVIDENCE.

Where the sufficiency of a petition is first challenged after answer by
an objection to the introduction of evidence thereunder, as is permitted
by the Nebraska practice, instead of in the usual and preferable way by
demurrer, the pleading should be liberally construed; merely technical
defects of averment should be overlooked, and the objection should not
be sustained unless there is a total failure to allege some matter which
is essential to the relief sought.

2. SAME—AVERMENT OF OWNERSHIP.

An averment that one is the owner of certain described property is an
averment of an ultimate fact, such as is permissible in good pleading,
and it is not necessary to describe the manner in which the pleader be-
came the owner.

3. CHATTEL MORTGAGE—REMOVAL AND SALE OF PROPERTY BY THIRD PERSON—
ACTION BY MORTGAGEE TO RECOVER PROCEEDS.

A petition alleging that plaintiff is the owner of a duly recorded chat-
tel mortgage on certain property to secure an unpaid indebtedness, and
that defendant wrongfully took possession of such property, removed it
from the state, and sold it in open market for a sum less than the in-
debtedness secured, which defendant has converted to his own use,
states a good cause of action on the case for the recovery of the sum so
received, without regard to plaintiff's possession of the property or right
of possession at the time the wrongful act was committed.

4. SAME—SUFFICIENCY OF DESCRIPTION.

A chattel mortgage covered 482 head of steers, two and three years
old past, all dehorned, and all branded with a certain brand, and re-
cited that all of said cattle were owned by the mortgagor and in his
possession on certain described premises. Held, it being shown that the
mortgagor had on the premises described but 471 head of steers of the
ages specified, that the mortgage was valid as to all of said 471 head,
although some of them were not dehorned nor branded, the description
being sufficient, aided by such inquiries as the mortgage itself suggested,
to enable a third party to identify such steers as those intended to be
conveyed.

5. EVIDENCE—COPIES OF DOCUMENTS—ESTOPPEL TO OBJECT TO COMPETENCY.

A defendant took the deposition of a railroad station agent, to which
he had attached, "as a part of the deposition," copies of certain way-
bills from the records of the station, kept in the usual course of business.
The deposition having been filed, on the trial plaintiff offered the copies
of waybills in evidence, to which defendant made a general objection,
but without objecting to their competency on the ground that they were
secondary evidence. Held, that they were properly admitted, in view of
the facts that no specific objection was made, that defendant by his
conduct in offering them as a part of the deposition in effect admitted
their reliability and competency, and the further fact that they were of
such a character that persons in the ordinary transactions of life would
not hesitate to act on the information they contained.

6. APPEAL—REVIEW—ERROR IN ADMISSION OF EVIDENCE.

When convincing evidence, such as copies of records kept by a third
party in the usual course of business, which no one in the ordinary
transactions of life would be inclined to distrust, is offered and admitted,
one who invokes the aid of some technical rule of evidence to secure a

¶ 2. See Pleading, vol. 39, Cent. Dig. § 23.

reversal of the judgment by an appellate court on account of the admission of such evidence should see to it that his objection is made in due form and at the proper time, and that his exception is properly taken and assigned.

7. TRIAL—DIRECTION OF VERDICT—EVIDENCE CONSIDERED.

Evidence considered, and *held* to justify a trial court in directing a verdict for plaintiff on the ground that there was no material question of fact for submission to the jury on which there was any substantial controversy, or upon which there was evidence to sustain a finding for defendant.

In Error to the Circuit Court of the United States for the District of Nebraska.

This action was brought by the South Omaha National Bank, of South Omaha, Neb., the defendant in error, against the George Adams & Frederick Company, the plaintiff in error. In its complaint the plaintiff below alleged that on February 27, 1901, it was the qualified owner of 157 head of steers then feeding on the farm of John R. Manning, in the county of Wayne in the state of Nebraska, by virtue of a chattel mortgage given to the plaintiff by said Manning, who was the owner of the steers, to secure the sum of $25,000 loaned by the plaintiff to said Manning, and duly filed for record in the office of the county clerk of said Wayne county on February 22, 1901; that on February 27, 1901, the defendant below took possession of the said 157 head of steers, at the place aforesaid, wrongfully, and wrongfully removed and sold the same and converted the proceeds to its own use, thereby depriving the plaintiff of its ownership therein; that the defendant sold the steers for the sum of $10,917.99; that the plaintiff had suffered damages by the wrongful act aforesaid in the sum of $10,917.99, for which amount it prayed a judgment, with interest thereon at the rate of 7 per cent. per annum from February 27, 1901.

The defendant below, in its answer, admitted that on or about February 22, 1901, John R. Manning had executed and delivered to the plaintiff a chattel mortgage upon a number of steers to secure the sum of $25,000 which was due to the plaintiff from said Manning, but it denied that by virtue of said chattel mortgage the plaintiff became the qualified owner of the steers mentioned in its complaint, and denied that at the time named in the plaintiff's complaint, or at any other time, the defendant had taken possession of any steers upon which the plaintiff had a chattel mortgage, or in which it had a special ownership, and denied that the defendant wrongfully took, removed, or sold any steers upon which the plaintiff had any lien, or in which the plaintiff had any special ownership or interest. For a second defense the defendant alleged the following facts, in substance: That on February 23, 1900, the said Manning, who was named in the plaintiff's petition, executed and delivered to the George Adams & Burke Company a note in the sum of $10,000, due six months after date, for that amount of money at that time loaned to him by the George Adams & Burke Company; that at the same time, to secure the payment of the note, Manning executed a chattel mortgage conveying to the George Adams & Burke Company 225 steers then in the possession of said Manning on his farm in Wayne county, in the state of Nebraska; that said note was subsequently and before maturity sold and indorsed by the George Adams & Burke Company, and that the indorsee thereof, by virtue of the sale, became the owner of the note, and continued to be the owner and holder until March 5, 1901, when it was paid; that on February 25, 1901, and March 5, 1901, said Manning, with the knowledge of said George Adams & Burke Company, shipped and caused to be shipped to Chicago, Illinois, in the name of John T. Frederick, the general manager of said George Adams and Burke Company, 157 steers, "as one hundred and fifty-seven of the two hundred and twenty-five steers named and described in the said mortgage from said John R. Manning to the said George Adams & Burke Company," and caused the net proceeds of the sale of said steers, to wit, the sum of $10,503.68, to be remitted from Chicago, Ill., to the said George Adams & Burke Company at South Omaha, Neb., to be applied in

payment of the aforesaid note of said Manning to said George Adams & Burke Company; that on receipt of the sum last aforesaid and of a small additional sum from said Manning, which together made the full amount then due and owing upon said note of said Manning to said George Adams & Burke Company, the last-mentioned company paid over all of the money so received to the then indorsee and holder of said note, and then and there received the note, and canceled and surrendered it to John R. Manning as having been fully paid, and likewise canceled the aforesaid chattel mortgage which was given to secure the payment of said note; that during the period aforesaid, when the aforesaid acts were done, the said George Adams & Burke Company had no notice or knowledge of any kind whatever of any mortgage in favor of the plaintiff made by said Manning, and had no notice whatever of any claim of the plaintiff in or to any of said 157 steers; that the chattel mortgage referred to by the plaintiff bank in its petition did not describe or identify any of the aforesaid 157 steers, and was so inaccurate and defective in description that the filing of said mortgage for record did not impart notice to said George Adams & Burke Company of any claim of the plaintiff in or to any of said 157 steers. The defendant admitted, however, that said 157 cattle were the identical cattle on which plaintiff in its petition claimed to have a special ownership by virtue of the chattel mortgage mentioned in its petition.

At the conclusion of the trial each party requested a peremptory instruction in its favor. The court sustained the plaintiff's motion in that behalf, holding that there was no contested issue of fact to be determined by the jury, and directing a verdict in favor of the plaintiff for the sum of $11,360.71, which was the sum that the defendant below had received for the cattle in controversy, together with interest thereon from the date of its receipt up to the rendition of the judgment. To reverse the judgment, the defendant below sued out a writ of error.

T. J. Mahoney (J. A. C. Kennedy, on the brief), for plaintiff in error.

W. W. Morsman (H. C. Brome and A. H. Burnett, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendant below filed an assignment of errors embracing no less than 47 specifications of error, but, as the case has been presented for review, there are two principal questions, and one or two others that are incidental and collateral, to be considered and determined. The first of these questions is whether the plaintiff's petition stated a good cause of action; and the second is whether the case is one which should have been submitted to the jury for its determination.

Relative to the first of these questions, it is to be observed that the defendant did not demur to the petition when it was filed, but answered in the manner heretofore stated. The bill of exceptions shows, however, that at the commencement of the trial the defendant's attorney did object to the introduction of certain evidence on the ground that the petition did not state a cause of action, and that he renewed this objection at the conclusion of all the evidence, when he asked for a peremptory instruction in the defendant's favor. The objection to the petition, which is urged in this court and is founded on certain Nebraska decisions (to wit, Hill v. Campbell Comm. Co., 54 Neb. 59, 74 N. W. 388, and Raymond v. Miller, 50 Neb. 506, 70 N. W. 22), is to the following effect: That the action was in trover for the wrongful conversion of 157 head of steers; that such an action

could not be maintained by the plaintiff unless it was entitled to the immediate possession of the property; that the complaint did not show such possession; that the allegation that the plaintiff was the "qualified owner" of the 157 steers in question was a mere statement of a legal conclusion; and that for these reasons the petition did not show that the plaintiff was entitled to the possession of the steers, or that it had any right to sue in trover for their conversion.

The method of testing the sufficiency of the petition that was practiced in this case, by making an oral objection to the introduction of any evidence after a lengthy answer had been filed and the complaint had been treated as sufficient, is one that does not commend itself to the favorable consideration of the court, because such a mode of attack often operates as a surprise, besides tending to delay trials after the parties have incurred considerable expense in taking testimony and in procuring the attendance of witnesses, which might not have been incurred if the sufficiency of the complaint had been tested in the usual way, by a demurrer. When such a mode of challenging the sufficiency of a complaint is adopted, the pleading in question should be construed liberally. Merely technical defects of averment should be overlooked, and objections made thereto should be overruled, unless they are of a substantial or fundamental character; that is to say, unless there is a total failure to allege some matter which is essential to the relief sought. This is the rule that obtains in Nebraska, in which state this case was tried, as well as the rule which has been sanctioned by this and other courts. Roberts v. Taylor, 19 Neb. 184, 188, 27 N. W. 87; Marvin v. Weider, 31 Neb. 774, 48 N. W. 825; Johnston v. Spencer, 51 Neb. 198, 200, 70 N. W. 982; Glaspie v. Keator, 5 C. C. A. 474, 56 Fed. 203, 211; Rush v. Newman, 7 C. C. A. 136, 139, 58 Fed. 158; Laithe v. McDonald, 7 Kan. 261; Whitbeck v. Sees (S. D.) 73 N. W. 915, 916.

Applying these rules of construction to the pleading in question, we cannot assent to the view that the averment that the plaintiff was "the qualified owner" of the 157 steers in controversy was a mere allegation of a conclusion of law, and that for that reason it should be wholly disregarded. An averment that one is the owner of certain described property is an averment of an ultimate fact such as is permissible in good pleading. It is not usually deemed necessary, when making an allegation of this sort, to describe the manner in which the pleader became the owner of the property, whether it was by purchase or otherwise. The essential fact necessary to be stated is that he was at a given date the owner. The plain meaning of the allegation that the plaintiff was "the qualified owner" of the cattle, when taken in connection with what follows, is that the cattle in question had been mortgaged to the plaintiff company to secure an indebtedness due to it in the sum of $25,000; that this indebtedness had not been paid when the cattle were removed and sold; and that the plaintiff's interest in the cattle was that of a mortgagee. This, we think, was a sufficient showing of an interest in the cattle to warrant the legal conclusion that the plaintiff had been damaged by the alleged removal of the cattle from the state and the sale thereof on the Chicago market.

Counsel for the plaintiff in error contends, however, that, even if the plaintiff's interest in the cattle is shown to be that of a mortgagee, yet until some condition of the mortgage was broken the cattle were rightfully in the possession of Manning, the mortgagor, and that the plaintiff could not maintain an action in trover as for the conversion of the property. But we do not regard the suit at bar as an action in trover nor is it necessary to treat it as a suit of that character. The petition alleges that the defendant wrongfully removed the cattle from the state and sold them for the sum of $10,-917.99, and it is this latter sum, with interest, for which it prays judgment. The action may well be treated, as it is in fact, as an action on the case. The plaintiff below, instead of demanding damages for the wrongful conversion of the cattle, elected to treat the defendant as its debtor for the sum of money which it had realized by the sale of the property, whereby its lien was lost and rendered valueless. The question of law to be determined, therefore, would seem to be whether one who wrongfully takes possession of mortgaged personal property which is at the time in the possession of the mortgagor, removes it from the state, and sells it so that it becomes dissipated and cannot be recovered by the mortgagee, may be held accountable to the mortgagee in an action on the case for the money which he realized by the sale. We can conceive of no sufficient reason why, under such circumstances, the wrongdoer should not be held liable to the mortgagee. The wrong committed is not merely a temporary interference with the possession of the mortgagor for which he alone can sue, but it consists of an act whereby the mortgagee's security is destroyed. When a third party wrongfully takes mortgaged property, and so deals with it as to destroy the value of the mortgagee's lien, the injury which he sustains is not dependent to any extent upon the inquiry whether he was or was not in possession of the property or entitled to its possession at the time the wrong was done. A cause of action exists in favor of the mortgagee against the wrongdoer irrespective of the question of possession. Goulet v. Asseler, 22 N. Y. 225; Cox v. Patten (Tex. Civ. App.) 66 S. W. 64, 67; Owens et al. v. Weedman, 82 Ill. 410; Sedgwick on Damages, § 81.

In the present case the cattle were sold on the Chicago market, presumptively for the purpose of being slaughtered. The mortgaged property has therefore lost its identity, and cannot be recovered by the mortgagee, even if it should make the attempt. Under these circumstances he doubtless has a cause of action against the one who has thus destroyed his lien. We fully concur in the view of the trial judge that the petition disclosed a cause of action on the case for the wrong in question, or at least that it contained sufficient allegations to support a judgment after verdict, and that the objection to the introduction of any evidence in support of the allegations of the petition was properly overruled.

Turning next to the defendant's answer, with a view of ascertaining what defenses were interposed, we think it clear that the defendant did not plead that it was a purchaser or mortgagee of the cattle in good faith or a creditor of the mortgagor, in such a sense

as·entitled it to protection, even if the description of the mortgaged property had been too defective to impart notice. When carefully analyzed, it will be observed that the defendant first denied that it was concerned in the wrongful removal and sale of the cattle. The rest of its answer was a plea, in substance, that Manning, the mortgagor, shipped the cattle to the defendant's general manager, Frederick, who sold the same, and applied the money to the payment of an antecedent debt of Manning, which was secured by a mortgage on 225 steers, other than those in controversy, which mortgage was executed February 23, 1900, and that the money was so applied in ignorance of the plaintiff's rights. The defendant did not plead that it was either a subsequent purchaser or a mortgagee of the cattle. It neither averred that it had bought the cattle in controversy or taken a mortgage thereon subsequent to the date of the plaintiff's mortgage, nor that it had caused the cattle to be seized subsequent to that date under a writ of execution or attachment against the mortgagor so as to have become such a creditor of the mortgagor as is entitled to protection under Nebraska laws and the decisions thereon. Sherwin v. Gaghagen, 39 Neb. 238, 250, 57 N. W. 1005; Rev. St. Neb. 1901, c. 32, § 3188. Its sole defense was that it was not a party to the wrongful removal and sale of the steers, and upon that issue the proof was plenary that it had taken part in the removal and sale, leaving nothing, as respects that issue, to be determined by the jury. At the conclusion of the evidence, therefore, the case stood as it might if the controversy had been one between the plaintiff and the mortgagor, inasmuch as the defendant failed to show that it had any greater rights than the mortgagor by virtue of its being either a creditor or a subsequent purchaser or mortgagee.

Counsel for the plaintiff in error suggests, however, that the mortgage in question did not create a lien, even as between the mortgagor and mortgagee, as respects the 157 head of steers now in controversy, because they were not so described in the mortgage as to be conveyed. Relative to this contention, it is to be observed that the mortgage purported to convey "four hundred and eighty-two (482) head of steers two and three years old past, all dehorned and all branded ——— on the left hip." This was the brand, as it seems, which the mortgagor usually placed on his stock. It was further recited in the mortgage "that all of said * * * cattle * * * are owned by said party of the first part, and * * * that said cattle * * * are * * * in the undisputed possession of the party of the first part on premises of said party on Sec. Nos. 27 and 28, in Tp. No. 27, range No. 2 E., in Wayne county, Nebraska, * * * and that said party of the first part will forever warrant and defend the title and possession of said cattle * * * against each and every person whomsoever." On the trial there was testimony tending to show that a good many of the 157 steers which were removed and sold were not thus branded and dehorned. Hence it is claimed that they were not covered by the mortgage, even so far as the mortgagor was concerned. On the other hand, the plaintiff below claimed that it had established beyond controversy (and if certain testimony to be hereafter considered was admissible, we think that it did so establish) that when the

mortgage was executed the mortgagor only had, on the farm above described, about 471 head of steers that were two and three years old past, and that among these were the 157 steers in controversy. The plaintiff below accordingly claimed that the description given in the mortgage was sufficient to convey the steers in controversy, although some may not have been branded and dehorned, and that they passed by the mortgage, because such was the evident purpose and intent of the mortgagor. We are of opinion that this contention on the part of the plaintiff below is well made. In determining what property was conveyed by the mortgage, all descriptive words and phrases must be considered, and the mortgage must be construed as a whole, so as to give effect to the intention of the contracting parties. The number of steers intended to be conveyed was 482 head of steers that were two and three years old past. They were further described as being steers then owned by the mortgagor and in his possession on his premises. These were all words of description tending to identify the mortgaged property, and when this description is applied to the subject-matter, and it appears that at the time the mortgage was drawn the mortgagor only had on his farm 471 head of steers two and three years old past, to which the description could be applied, the conclusion seems obvious that these were the cattle which he intended to convey, and that the misdescription of the brand on some of the steers, and the statement that they were dehorned, was due to inadvertence, and that the mortgagor intended to convey all the steers then on his premises up to the number specified. Any other view would impute to him an intention to perpetrate a gross fraud. The description of property in a chattel mortgage need only be such as will enable third parties to identify the property intended to be conveyed, aided by such inquiries with reference thereto as the mortgage itself would suggest; and we think that a person finding this mortgage of record, and finding that at the time it was drawn there were only 471 head of steers at the place indicated, to which the descriptive language contained in the instrument would apply, would very naturally conclude that they were the steers which the mortgagor intended to convey. Wiley v. Shars, 21 Neb. 712, 33 N. W. 418; Rawlins v. Kennard & Sons, 26 Neb. 181, 41 N. W. 1004.

The testimony to which allusion has been made in the last paragraph as showing very decisively, in connection with other evidence, that Manning had not to exceed 471 head of steers on his premises in Wayne county when he executed the mortgage in question, consists of records kept by a railroad station agent at Carroll, Neb., near where Manning resided, and from which station he shipped all of his cattle. The records consisted of letterpress copies of waybills issued to Manning by the station agent when he shipped cattle, and showed in detail the number of cattle shipped, the date of shipment, the number of the car in which the shipment was made, and the names of the consignor and consignee. These copies of waybills were made by the agent in the usual and ordinary course of business, and were preserved in a book kept in his office. The plaintiff in error, the defendant below, caused the deposition of Acton, the station agent, to be taken, and the copies of the waybills in question to be produced and

identified by him, and attached as exhibits to the deposition which was filed in the cause as a part of the proofs. Moreover, when these copies of the waybills were thus produced and attached to the deposition, the statement was made by the defendant's attorney that he offered them in evidence "as a part of the deposition." Counsel for the plaintiff below were present at the taking of the deposition, and made no objection to the waybills when they were thus offered.

On the trial the plaintiff below, the defendant in error here, offered those waybills, which showed the shipments of cattle that had been made by Manning from November 6, 1900, to about June 26, 1901, after which date, as it was shown, Manning had no cattle on his premises. Subsequently the defendant below offered the rest of the waybills which it had caused to be produced and filed, showing, in connection with those that had been offered by the plaintiff, all the shipments of cattle that were made by Manning from May 7, 1900, to June 26, 1901. When the plaintiff offered the waybills in evidence the record shows that the defendant's attorney objected to them for the following reasons: "As irrelevant and immaterial, not the character of records authorized to be put in evidence, and that the petition does not state a cause of action."

It is argued in this court that the waybills were not admissible because no foundation was laid for their introduction by showing why the originals were not produced, and because they related to transactions between Manning and the railroad company, and were "res inter alios acta." But no specific objection of this sort was made to the waybills in the trial court. The objection, as will be observed, was of the most general character, and may have been construed by the trial judge as based principally, if not entirely, upon a supposed defect in the petition. Objections to testimony, as we have heretofore said (Burlington Ins. Co. v. Miller, 19 U. S. App. 588, 591, 8 C. C. A. 612, 60 Fed. 254, 257), ought always to be made specific when one intends to rely upon the objection on appeal, so as to challenge the attention of the trial court to the very point on which the objecting party intends to rely. Again, the error said to have been committed in receiving these waybills is not assigned in the manner required by rule 11 of this court (31 C. C. A. cxlvi, 90 Fed. cxlvi), and we feel disposed, in a case of this sort, to enforce the rule strictly. Furthermore, the defendant, by its conduct in producing the waybills and offering them in evidence as exhibits to Acton's deposition, in effect admitted their reliability, and gave the opposite party just ground to believe that they would and might be used at the trial as competent testimony. Moreover, no one can doubt that these waybills, kept as they had been, were such persuasive evidence of the facts recorded that no one in the ordinary transactions of life would hesitate to act on the information which they contained. For all of these reasons we are of opinion that the objection made to the admission of the waybills ought not to be esteemed tenable by this court. In a recent case (Fourth National Bank of St. Louis v. Albaugh, Receiver [decided Feb. 23, 1903] 23 Sup. Ct. 450, 47 L. Ed. ——), the Supreme Court remarked that "the whole tendency of decisions and legislation is to enlarge the admissibility of hearsay,

where hearsay must be admitted or a failure of justice occur." When, therefore, convincing testimony like that under consideration, which no one in the ordinary transactions of life would feel inclined to distrust, is offered and admitted, one who invokes the aid of some technical rule of evidence to secure its exclusion, and thereby suppress the truth, should see to it that his objection is made in due form, at the proper time, and that his exception is properly taken and assigned, if, on account of the admission of such testimony, he expects to secure a reversal of the judgment by an appellate court.

The remaining question to be considered is whether, at the conclusion of all the evidence, the trial court was justified in directing a verdict for the defendant or should have submitted the case to the jury. We have examined the testimony with much care, and have reached the conclusion that this question should be answered in the affirmative. As the case stood at the conclusion of the trial, the only question of fact concerning which there could have been any doubt or controversy was whether Manning had more than 482 steers, the number covered by the plaintiff's mortgage, on his premises on February 20, 1901, when the mortgage was executed. The only reasonable hypothesis on which the defendant below could assert that the 157 steers, which it caused to be shipped and sold, were not covered by the plaintiff's mortgage, was that Manning had more than 482 steers on his premises at the time last stated. It is not claimed, however, that the 157 steers formed any part of the 225 steers that were mortgaged to the George Adams & Burke Company on February 23, 1900, nor would the evidence afford any support to such a contention if it was made. The proof, taken altogether—that is to say, the testimony of Manning himself and the testimony of persons who were in his employ, and the waybills to which reference has already been made—if carefully analyzed, demonstrates very clearly, we think, that Manning did not have more than 461 head of steers on his place on February 20, 1901, and that the 157 steers which the defendant caused to be removed and sold formed a part of that number, and were in fact covered by the mortgage. There was no substantial evidence, we think, such as would have warranted a jury composed of reasonable men in coming to a different conclusion, and if they had done so the trial court would have been warranted in setting the verdict aside. Under these circumstances, no error was committed in directing a verdict against the defendant company for the amount of money that it had received on the sale of the 157 steers, and the judgment below is accordingly affirmed.