OSCAR F. STRAND v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 17, 1907.

Nos. 15,078—(49).

**Defective Appliances.**

The evidence is sufficient to justify the jury in finding that the boiler of the engine in question was defective when turned over to the engineer and fireman, that appellant was negligent in not repairing the same, and that the explosion which caused respondent's injuries was the proximate result of such negligence.

**New Trial.**

The trial court did not err in refusing to grant a new trial upon the ground that appellant was taken by surprise at the trial by the testimony of certain witnesses whose depositions might have been taken previously in connection with other witnesses.

**Same.**

No error was committed in refusing to grant a new trial on account of alleged newly discovered evidence.

**Charge to Jury.**

No reversible error was committed in charging the jury.

**Evidence—Record Made by Servant.**

Whether records made by an employee in the regular course of business are properly verified, so as to entitle them to admission as original evidence for the purpose of corroborating a witness, is addressed to the sound discretion of the trial court. It does not conclusively appear that the court erred in refusing to admit in evidence, upon the ground that it was not properly verified, a certain paper purporting to be a report of the examination of a certain engine by a boiler maker in appellant's shops.

[1] Reported in 111 N. W. 958.

**Excessive Verdict.**

A verdict of $30,000 *held* excessive in the sum of $10,000, and a new trial is granted unless respondent consents to reduce the verdict to $20,000.

Action in the district court for Benton county to recover $75,250 for personal injuries. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of plaintiff for $30,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. New trial granted unless plaintiff consents to a reduction of the verdict to $20,000.

*M. L. Countryman* and *Geo. H. Reynolds*, for appellant.

*M. H. Boutelle, Calhoun & Bennett*, and *McElwee & Hollihan*, for respondent.

LEWIS, J.

Respondent recovered a verdict of $30,000 for personal injuries received August 14, 1904, by the explosion of the boiler in the locomotive on which he was working as a student fireman. He was on the front engine of a so-called "double header" freight train going easterly, which, at the time of the accident, was at a point where the mountain grade averaged 2.2, being an ordinary mountain division grade. It is undisputed that about four feet of the front end of the crown sheet, over the fire box, was blown down by the steam pressure in the boiler.

The principal question upon this appeal is whether the allegations of the complaint charging negligence are sustained by the evidence. The complaint charged that appellant was negligent in permitting the engine to get out of repair, in allowing its boiler to become covered with mud and sediment, and to be in an unsafe and dangerous condition. The answer alleged that the explosion was due solely to the failure of keeping a sufficient supply of water in the boiler, and that respondent and the engineer were negligent in that respect.

Considerable evidence was submitted on both sides of the case. A machinist by the name of Watts, employed at the Delta roundhouse, Everett, Washington, testified on behalf of respondent that on the night of August 12 the foreman had directed him to make an examination of this engine; that he had done so, and found the crown sheet "wavy" between twelve or thirteen rows of crown bolts in the front of the fire box, and the sheet was leaking where the seam lapped onto the

flue sheet, and also around ten or fifteen of the crown bolts. This condition was described by some of the witnesses as ."touched up," which means overheated. Watts was corroborated to some extent by his helper, Stephens. Respondent testified that immediately before the happening of the accident he had examined the gauge, and found it indicated that the boiler was well filled. A witness, testifying on behalf of appellant, stated he was a machinist and that it was his business to inspect engines; that on the day before the explosion he had examined the engine in question and found it in good condition. Davis, the engineer at the time of the accident, testified that so far as he knew the injectors and water gauges were operating all right; that the engine was doing proper work, and "guessed that, if it had been handled absolutely properly, the accident probably wouldn't have occurred."

Several witnesses were called as experts by appellant, who testified that the engine would not operate or do its work properly if in the leaky condition described by Watts, and, from the condition of the bolt heads that were pulled out at the time of the explosion, it was their opinion that they must have been burned off at that time, which could not have happened unless the crown sheet at the front end of the engine had been exposed to the fire without being covered with water. Appellant laid considerable stress upon the fact that when the fusible safety plug, or so-called "telltale," was taken from the crown sheet after the explosion, the Babbitt metal had melted, and its condition indicated that it must have done so before the explosion, which signified that the water in the boiler was allowed to get too low. On the other hand, experts called on behalf of respondent testified that the very purpose of the telltale is to indicate that the water in the boiler is getting low; that, when the crown sheet is not protected by water, the heat melts the metal in the telltale and allows the water and steam to run through the tube, putting out the fire, and thus giving the signal for which the apparatus is intended.

1. Without reviewing the various statements and claims of the respective witnesses upon the several points which were the subject of investigation, in our judgment the evidence was sufficient to justify the jury in finding that the crown sheet and bolt heads of the boiler had been "touched up" on previous occasions; that the boiler was in a

leaky and defective condition when in the roundhouse the day before the accident; that it was not properly inspected and repaired, and was sent out on the road in an imperfect condition, which was not discovered by either the engineer or fireman; that respondent, as fireman, and the engineer, were not negligent in the performance of their duties; and that the explosion was the result of the faulty condition of the boiler when the engine was turned over to them.

2. The point is made that appellant was taken by surprise at the trial by the testimony of the witnesses Watts and Stephens. This claim is based upon the fact that depositions of certain witnesses were taken at Everett shortly before the trial, and that appellant had been led to believe that the respondent at that time examined all the witnesses he desired to call with respect to the condition of the engine. Respondent was not under any obligation to take the depositions of all of his witnesses, nor was he required to notify appellant what witnesses he expected to call at the trial; and we fail to discover any conduct on his part in any way justifying appellant in assuming that no other witnesses would be called at the trial. It is unnecessary to notice particularly the application for a new trial upon the ground of newly discovered evidence. The affidavit of Engineer Davis contains nothing but cumulative or impeaching statements, and these are not of sufficient importance to justify a new trial.

3. In charging the jury the court used the following language:

> * * * If you should find that the company was not responsible, then, of course, the fact that his fellow servant, Mr. Davis, would escape on the ground that there would be no law requiring the mulcting of him for damages should not influence you, and in that event there would be a verdict for the defendant.

While true, this statement had no legal bearing upon the issues before the court, yet it does not appear to have been used for the purpose of prejudicing the jury against appellant, nor is there any indication that it had such effect. It might as well be charged that the court was intending to guard the jury from being unduly influenced in favor of respondent.

The court also charged:

So far as damages are concerned, gentlemen, a large amount is claimed here. You have heard all the particulars of the case,. and in fixing the amount of damages you should be governed by reason, taking all things into consideration. There should be no attempt·to punish the railroad company, or to give more than you think is right. Do it as you would any other business matters among yourselves, and if you come to damages, after carefully considering it, fix the amount that the plaintiff is entitled to and bring in your verdict accordingly.

At the beginning of the charge the court stated that the action was. brought to recover damages for injuries on account of the negligence of appellant; also that the pleadings would be sent out with the jury. Strictly speaking, the court did not say to the jury that respondent would be permitted to recover only such amount as would compensate him for his injuries; but we are not at liberty to assume that the jury did not fully understand the real nature of the issue submitted to them. If there was any doubt in counsel's mind that the jury did not fully understand the nature of the issue, he was required to intimate such doubt to the court and make the proper request.

4. Appellant's witness Dowling, master mechanic of the Cascade division, was shown Exhibit 9, and stated it was a report of Strachan's inspection of the engine in question, and was in his handwriting, dated August 13, 1904; that the report had been turned in to his (Dowling's) office, and was made in the regular course of Strachan's employment. Appellant then offered the exhibit in evidence, which was objected to as incompetent, irrelevant, and immaterial, no foundation laid, and not the best evidence.

The testimony of Strachan had been taken by deposition at Everett, Washington, a short time before the trial, in which he testified that he was boiler inspector in the shops at Everett; that he had inspected the boiler of the engine in question on August 13, the day before the accident, and had found a broken stay bolt, which he had repaired, but that everything else was in good shape. On cross-examination, he was asked whether he made any record of the examination, and answered that he had a record, but that the locomotive foreman at the Everett roundhouse, Mr. Proudman, had it in a cupboard there. The

witness stated that he had not examined the record since; that it consisted of books ready to be filled out. Respondent's attorney then requested the witness to produce the record in the afternoon of that day, which he promised to do. Proudman was then called as a witness on behalf of appellant, and stated that he had in his custody the records of the examinations of locomotives. Counsel for appellant then stated that, in answer to respondent's demand, Proudman had been requested to bring the records into court, whereupon respondent's attorneys waived all demand for the records, and the report in question was not introduced in evidence. So the question now presented is whether, under the circumstances, it was error for the trial court to refuse to receive the report as original evidence, for the purpose of corroborating the testimony of Strachan, formerly taken by deposition.

This Exhibit 9, so far as the record shows, is an independent piece of paper, and is as follows:

Great Northern Railway Line.

Office of Master Mechanic.

Cascade Division.

Condition of engine 1108 for the month of 8/13, 1904:

1. Deflecting plates—18 Height. Out.
2. Petticoat pipe—Hasn't any.
3. Grates—O. K.
4. Shaker rods—O. K.
5. Size of nozzle—4⅞.
6. Size of bridge—⅜.
7. Self-cleaning front end—say yes or no: Yes.
8. Stay bolts. Date tested. 8/13, put in one rite front corner.
9. Flues. O. K.
10. Remarks. Fire box in first-class shape.

> D. Strachan,
> Boilermaker at Delta.

The law on this subject is by no means clearly settled. The rule relied upon by appellant is that, where a witness is charged with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist, or when motives of in-

terest would have induced him to make a different statement from that which he made.

Insurance Co. v. Guardiola, 129 U. S. 642, 9 Sup. Ct. 425, 32 L. Ed. 802, presents one view of the question, and it was held that letters of a shipping agent to his principal were not competent evidence, either in themselves or in corroboration of the agent's testimony of the quality of the goods shipped, against third persons, upon the ground that the evidence was self-serving. In Callihan v. Washington, 27 Wash. 154, 56 L. R. A. 772, 67 Pac. 697, 91 Am. St. 829, it was held that a street car conductor's trip report as to fares taken, verified by himself, was admissible in evidence in a personal injury case against the company, in corroboration of his testimony that he received no transfer on that trip. We held in Swedish-Am. Nat. Bank of Minneapolis v. Chicago, B. & Q. Ry. Co., 96 Minn. 436, 105 N. W. 69, that it was not error to receive as original and independent evidence the car record of another common carrier, which tended to show that the cars of produce in question were delivered to such other carrier. It was stated in the opinion that the entries were made under circumstances precluding any motives for misrepresentation, and under conditions calculated to insure accuracy. It was further stated that the decision of the trial court upon the admissibility of such evidence would not be reversed, if there was any evidence fairly sustaining its conclusion that the entries were properly verified.

In the case before us the trial court held that the exhibit was not entitled to be received as original evidence, but that it should be verified by the person who made it and used as a memorandum in connection with his testimony. In view of the complicated and extensive business transactions of modern times, it seems to be the tendency of courts to treat as original evidence such entries and reports as are made in the regular course of business, provided they appear free from the charge of fraud, mistake, or self-interest. Whether such records and reports, in a given case, are verified to the extent which entitled them to be received as original evidence, is a matter which rests largely in the discretion of the trial court. In this case it does not appear why appellant did not introduce the records, at the time of taking Strachan's deposition, so that he could verify his own record. Proudman testified that he was the custodian of such records as were kept upon the report of boiler examinations, while Dowling testified that he had at

all times had possession of Exhibit 9. Strachan, in his deposition, testified that he had made the entry in a book which was in the roundhouse at Everett, and when he used up one book he got another; whereas, at the trial, appellant produced what appears to be a single paper, which was offered independently of any book, or records, in connection with which it appeared. Here were some apparent discrepancies going to the validity of the report, but the whole matter was addressed to the sound discretion of the trial court, and we cannot hold that, under the circumstances, it was error to refuse to receive Exhibit 9 as original evidence.

5. A verdict of $30,000 in this case was large; but, under all the evidence with respect to respondent's injuries, we are not able to say that it was so excessive as to indicate that the jury were influenced by passion or prejudice in arriving at the amount.

Respondent is a young man, twenty six years old, and well and strong before this accident. As a result of his injuries he was in a hospital in Everett for about six months, and the physician who treated him after his return to Foley testified that five-eighths of his body showed evidence of burns of different degrees; that about two-thirds of the surface of his legs were seriously burned and covered with scars, a majority of which would be classed as burns of the third degree—burns where the tissue is destroyed, and nature reproduces a new fibrous tissue; that such burns affect the nerves and superficial vessels supplying the skin and vessels that feed·the skin, which are bound down and strangulated in this new reproduced fibrous tissue, causing constant irritation, for which there is no cure; that he did not think there was any chance for improvement; and that in his opinion respondent would never be able to do any work. Respondent testified that he was unable to walk erectly, or to do any work, and suffered great irritation and discomfort with changes in the weather. While it seems that the burns are healed, and the functions of his body are normal, yet, if this record is true, respondent is crippled for life, unable to engage in any kind of active physical work, and will always suffer more or less irritation and pain. Still his mental faculties are unimpaired, and no doubt he will be able to attend to some lines of employment which do not require much physical exertion.

Under all the circumstances of the case we conclude that the verdict is excessive to the extent of $10,000.

It is therefore ordered that a new trial be granted, unless respondent files a written stipulation in the court below, within twenty days after the filing of the remittitur, consenting to the reduction of the verdict to $20,000.

On August 2, 1907, the following opinon was filed:

PER CURIAM.

A re-argument was granted herein upon the question whether or not the trial court erred in refusing to receive in evidence the inspector's report, which is designated in the record as No. 9. We have further considered the question in connection with the briefs filed on the rehearing and have reached the conclusion that the trial court did not err in rejecting the exhibit. The former opinion is therefore adhered to.