[Civil No. 2278.   Filed May 22, 1925.]

[236 Pac. 704.]

## H. R. WILKINSON, Appellant, v. PHOENIX RAILWAY COMPANY OF ARIZONA, a Corporation, Appellee.

1. CARRIERS—INSTRUCTION AS TO COMPARATIVE DEGREE OF CARE REQUIRED BY CARRIER OF GOODS AND CARRIER OF PERSONS HELD NOT ERRONEOUS, THOUGH SUCH MATTER NOT IN ISSUE.—In action by passenger for injuries while alighting from train, instruction as to comparative degree of care required by carrier of goods and carrier of persons, made for purpose of comparison and illustration, though such matter was not in issue, *held* not erroneous.

2. TRIAL—ILLUSTRATING ISSUES IN POINT BY APPROPRIATE REFERENCES NOT OBJECTIONABLE AS SUBMITTING ABSTRACT QUESTIONS.—Rule, prohibiting submission of abstract questions to jury, does not go to extent of preventing court from illustrating issues in point by appropriate references.

3. APPEAL AND ERROR—PLAINTIFF CANNOT COMPLAIN OF ERRONEOUS INSTRUCTION INDUCED BY HIM AND SUBSTANTIALLY COVERING HIS REQUESTED INSTRUCTION.—Though instruction, defining reasonable care required of carrier of passengers, was not a correct statement of rule, *held* that, where such instruction was substantially the same as that requested by plaintiff, which requested instruction was refused, as having been covered, plaintiff, having induced such erroneous instruction, cannot complain.

4. APPEAL AND ERROR — ONE, MISCONCEIVING LAW AND CONVINCING COURT THEREOF, ESTOPPED TO TAKE ANY ADVANTAGE OF IT ON APPEAL.—One, who misconceives law governing his rights in a trial and succeeds in convincing court thereof, is estopped to take any advantage of it on appeal.

5. TRIAL—INSTRUCTION ON BURDEN OF PROOF, THOUGH ERRONEOUS IF STANDING ALONE, HELD NOT PREJUDICIAL, IN VIEW OF OTHER INSTRUCTIONS AND OF UNCONVINCING EVIDENCE IN APPELLANT'S FAVOR. — Though an instruction, that burden was on plaintiff throughout case of establishing to jury's "satisfaction," etc., standing alone would be erroneous as placing too much of a burden on plaintiff, *held* that in view of several other instructions requiring proof by preponderance of evidence, and defining preponderance of evidence, and in view of weak and unconvincing evidence in plaintiff's behalf, no prejudicial error resulted.

6. TRIAL—INSTRUCTION, THAT COURTROOM NO PLACE FOR SYMPATHY, HELD NOT ERRONEOUS.—An instruction, that courtroom was no place for sympathy, but that plaintiff was entitled to that which he had proved by the evidence, and jury should not hesitate to give him that, was not erroneous.

7. TRIAL—COURT'S STATEMENT, THAT "FIGMENTS" OF WHAT SOMEBODY ELSE SAID NOT EVIDENCE, CONCEDING WORD "FIGMENT" WAS USED, DID NOT CONVEY IDEA THAT COUNSEL WAS ATTEMPTING TO INTRODUCE MANUFACTURED OR UNTRUE EVIDENCE.—Where court in rejecting plaintiff's offer of documentary evidence stated that "figments" of what somebody else has said is not evidence, conceding that court used word "figments" it did not convey idea to jury that counsel was attempting to introduce manufactured or untrue

4.    See 14 R. C. L. 815.
6.    See 14 R. C. L. 749.

evidence, as jury must have understood that court used word "fragments."

8. APPEAL AND ERROR — PLAINTIFF READING MODIFIED INSTRUCTION WITHOUT MODIFICATIONS CANNOT COMPLAIN, IF COURT'S RULING RESULTED IN DEPRIVING HIM OF BENEFIT OF INSTRUCTION.—Where plaintiff's counsel, in reading instruction, read it without modifications which court had made, and court on objection from defendant stated that instruction will be disregarded, unless counsel stated modifications added by court, *held* that if result was to deprive plaintiff of benefit of instruction, he cannot complain, as instruction should have been read, if at all, in full.

9. APPEAL AND ERROR—PLAINTIFF HELD NOT IN POSITION TO COMPLAIN, IF RESULT OF COURT'S REMARK WAS DETRIMENTAL, IN VIEW OF FAILURE TO REMOVE SUCH IMPRESSION.—Where court informed plaintiff's counsel that his time was up, but would give him five minutes more, but not a plea for sympathy, which extension counsel did not accept, but immediately sat down, *held* that if impression left on minds of jurors was detrimental to plaintiff, he cannot complain, as counsel should have accepted or rejected court's offer with explanation that he did not intend to plead for sympathy.

10. EVIDENCE—WITNESSES—TIME AND TRIP REPORTS OF RAILROAD EMPLOYEES, TENDING TO DISPROVE PLAINTIFF'S TESTIMONY, PROPERLY ADMITTED.—In action by passenger for injuries while alighting from train, where plaintiff had located accident as happening on 10 o'clock at night trip and testified that L. was conductor on car, time and trip reports of defendant's employees, on date of alleged injury, which tended to disprove plaintiff's testimony that L. was conductor on car, were relevant and material, and were not hearsay and self-serving and were properly admitted.

11. EVIDENCE—COMMON KNOWLEDGE THAT MEN GENERALLY TRY TO COMPOSE DIFFERENCES BEFORE GOING TO COURT.—It is common knowledge that men generally try to compose their differences before going to court.

12. APPEAL AND ERROR — CROSS-EXAMINATION OF PERSONAL INJURY PLAINTIFF AS TO FAILURE TO PRESENT CLAIM BEFORE BRINGING SUIT NOT PREJUDICIAL WHERE NOT OBJECTED TO.—Permitting cross-examination of passenger suing for injuries while alighting from train, as to why he did not present his claim to defendant's agent before bringing suit, was not prejudicial, where defendant went into question fully without objection from plaintiff, and plaintiff on cross-examination stated without objection that he did not say anything to defendant's employees about his injury, until after suit was brought.

8.  See 14 R. C. L. 761.

13. EVIDENCE — LEADING QUESTIONS TO EXPERT WITNESSES WITHIN
   TRIAL COURT'S DISCRETION.—The question of propounding leading
   questions to expert witnesses is entirely within trial court's dis-
   cretion.

See (1) 10 **C. J.,** p. 1085.   (2) 38 **Cyc.,** p. 1612.   (3) 4 **C. J.,**
pp. 709, 710.   (4) 4 **C. J.,** p. 700.   (5) 38 **Cyc.,** p. 1754.   (6) 38
**Cyc.,** p. 1760 (1926 Anno.).   (7) 38 **Cyc.,** p. 1320.   (8) 4 **C. J.,**
p. 714 (1926 Anno.).   (9) 4 **C. J.,** p. 714.   (10) 22 **C. J.,** pp. 208,
227; 40 **Cyc.,** p. 277.   (11) 23 **C. J.,** p. 150 (1926 Anno.).   (12) 3
**C. J.,** p. 830.   (13) 22 **C. J.,** p. 710.

APPEAL from a judgment of the Superior Court
of the County of Maricopa.   Fred C. Struckmeyer,
Judge.   Affirmed.

Messrs. Cox & Moore, for Appellant.

Messrs. Chalmers, Stahl, Fennemore & Longan, and
Mr. Thomas G. Nairn, for Appellee.

ROSS, J. — H. R. Wilkinson brought this suit
against the Phoenix Railway Company of Arizona
to recover for personal injuries, which he alleges he
sustained through the negligence of defendant while
alighting from one of its cars.   The case was tried
before the court with a jury, and resulted in a ver-
dict for the defendant.   The plaintiff made his mo-
tion for a new trial, which motion was overruled.   He
prosecutes this appeal from the order overruling his
motion for a new trial, and from the judgment.

There are 12 assignments of error.   The first three
are based on the instructions; the next three on lan-
guage used by the court in its rulings during the
trial; the next four upon the admission of certain
exhibits in evidence.   In the eleventh assignment
plaintiff complains because the court permitted the
attorney for defendant to cross-examine him as to
his reasons for not presenting his claim for damages

13.. See 28 R. C. L. 590.

to defendant before bringing suit; and in the twelfth, because the court permitted defendant's attorney to ask leading questions of an expert medical witness (Dr. C. B. Palmer) concerning plaintiff's injuries. We will consider these assignments as grouped, in their order.

The first instruction is as follows:

"It might be interesting for you gentlemen to know that so far as cattle and goods are concerned, a railway company or a common carrier is an insurer, it must deliver at all events. Only an act of God relieves it from liability if such goods or cattle are destroyed. As to human beings, a railway company 'is only bound in its carriage of such persons to the exercise of reasonable care, as reasonable care has heretofore been defined."

And is objected to as containing matters not in issue in the case, and as an improper statement of the care required of carriers of passengers.

It is true the comparative degree of care required to be bestowed by a carrier of goods and a carrier of persons was not in issue, but we are unable to see wherein the statement of the rules of law governing such cases, when made for the purposes of comparison or illustration, could have had any other effect than to impress upon the minds of the jurors which one of the rules they were to use as their guide in arriving at their verdict. The rule against submitting abstract questions to the jury does not go to the extent of preventing the court from illustrating by appropriate references the issues in point.

In order to find out whether the "reasonable care" referred to in this instruction was an improper statement of the care required of a carrier of passengers, it is necessary to look to the court's instruction defining that term. It was as follows:

"In relation to the care required of each party, you will only hold them, whether the plaintiff or the de-

fendant, to the exercise of ordinary care, which consists of doing everything which a person of ordinary care and prudence would do, and omitting to do everything which a person of like care and diligence would omit to do. In other words, place yourselves in the position of the parties, and then as reasonable men determine whether or not the plaintiff or—whether or not the defendant or the plaintiff had done something which they should not have done or failed to do something which they should do under the like and similar circumstances.''

10 C. J. 858, section 1297 (the author in the preceding section having stated the varying expressions of courts and text-writers defining the care to be exercised by carriers of passengers), lays down what we conceive to be the proper rule, as follows:

''In view of the limitations which will be stated hereafter, the rule is probably more accurately stated as the highest degree of care, prudence, and foresight that a prudent man engaged in the business, as usually conducted, would employ, that is, such care as is reasonably practicable; or in other words, such care, prudence, and foresight as can reasonably be exercised consistent with the practical operation of the road or mode of conveyance used, and the exercise of its business as a carrier, taking into consideration the circumstances and conditions existing at the time and place in question; and in some cases this degree of care has been expressed as the highest practicable care, caution, and diligence which capable and faithful railroad men would exercise under similar circumstances.''

It is plain the instruction given is not a correct statement of the rule. However, it seems to be as strong and as favorable as the plaintiff thought himself entitled to have. His request upon the very question was in this language:

''Negligence as used in these instructions is a failure to use that degree of care and diligence that an

ordinarily prudent person would use in his own affairs under like or similar circumstances.''

The court did not give this instruction because, according to the notation thereon, it had been covered. It is very probable that the learned trial judge was led to give the instruction he did, and to which exception is now taken, largely by the above request of plaintiff. If plaintiff had presented the court with an instruction, in proper form, defining the degree of care imposed by law upon the carrier of passengers, and thus made his position on that question clear, a different situation would be presented. We think the rule is universal that a party cannot complain of an instruction given at his own request, or one given by the court substantially covering his request. He is bound by the theory of his own instructions. 14 R. C. L. 815, § 73. See, also, *Denver & R. G. R. Co.* v. *Peterson,* 30 Colo. 77, 97 Am. St. Rep. 76, 69 Pac. 578; *Cicero & P. St. Ry. Co.* v. *Meixner,* 160 Ill. 320, 31 L. R. A. 331, 43 N. E. 823; *Hazell* v. *Bank of Tipton,* 95 Mo. 60, 6 Am. St. Rep. 22, 8 S. W. 173. Since the erroneous instruction was induced by the plaintiff he is not in a position to complain. One who misconceives the law governing his rights in a trial, and succeeds in convincing the court thereof, ought to be estopped to take any advantage of it upon appeal.

The court told the jury ''that the burden is upon plaintiff throughout the whole case of establishing to your satisfaction, by a preponderance or greater weight of the evidence, that defendant, . . . '' etc. Exception is taken to the use of the word ''satisfaction'' as requiring too high a degree of proof.

In a fraud case recently we held a similar instruction correct. *Schwalbach* v. *Jones,* 27 Ariz. 260, 232 Pac. 558. But in the ordinary civil case we think it places too much of a burden on a plaintiff or the party asserting an affirmative. The jury must be

guided by a preponderance of the evidence, even though it may not be satisfactory. *Texas & P. Ry. Co.* v. *Ballinger* (Tex. Civ. App.), 40 S. W. 822; *Mock* v. *Hatcher* (Tex. Civ. App.), 43 S. W. 30. If this instruction stood alone, or if the evidence was in any way equally balanced, its giving would require a reversal. In at least four other places in the instructions, the jury were told in words or effect as follows:

"The party having such burden of proof, as already told you, must carry such burden (and) fulfill such duty by proving its proposition by a preponderance of the evidence. By a preponderance of the evidence, as used in these instructions, is meant the greater weight of the evidence."

The effect of these instructions upon the minds of the jurors is hardly problematical, since in only one was the word "satisfaction" used, whereas in four places the jury was given to understand the burden of proof was established by a preponderance of the evidence. It is not probable the instruction was prejudicial standing alone, for the reason the evidence in plaintiff's behalf was, to say the least, very weak and unconvincing.

The third instruction told the jury the "courtroom is not a place for sympathy," but that plaintiff was entitled to that which he had proved by the evidence, and they should not hesitate in giving him that. The reference to sympathy is excepted to as not in issue in the case. In many cases it is not only eminently proper but necessary that the court warn the jury against being influenced by sympathy, and the trial court in this case certainly stated the matter as fairly as could be asked.

In the fourth assignment the language of the court, to which exception is taken, was used in a ruling rejecting an offer of some documentary evidence offered by plaintiff, and was as follows:

"The objection is sustained. I will explain to the jury that figments of what somebody else has said is not evidence. . . . ''

It is said the court by this language conveyed the idea to the jury that counsel for plaintiff was attempting to introduce manufactured evidence, or evidence that was untrue, and this is predicated principally upon the use of the word "figments." Granting the court used the word "figments," our reaction is not the same as plaintiff's counsel, but we think from the context the court must have used the word "fragments" and was incorrectly reported, and that the jury must have so understood.

During the argument counsel for plaintiff was, it seems, reading an instruction. It was one that he had requested and which had been given with some modifications. He read it without the modifications. Upon objection from defendant's counsel the court said:

"That instruction will be disregarded, unless counsel will state the qualifications the court added in the instruction."

The complaint against this ruling is that it deprived the plaintiff of the benefit of the instruction. If so, it was plaintiff's fault. The instruction should have been read, if read at all, in full. The ruling was proper. 14 R. C. L. 761, § 30.

Complaint is made of the following remark of the court:

"The Court: Your time is up, Mr. Cox.

"Mr. Cox: Gentlemen of the jury—

"The Court: Your time for argument is up. If you desire to argue the evidence a little longer, you might do so, and I will give you five minutes, but not a plea for sympathy,"

—because, it is said, such remarks conveyed the idea to the jury that counsel was making a plea of sym-

pathy on plaintiff's behalf. The language the court interrupted was as follows:

"Now, what have you got before you in order to decide against this man? It don't need sympathy. We all like for the white-winged angels of mercy to hover above us and around us, but—"

Counsel did not accept the extension of time offered by the court, but immediately sat down. He now avers that if he had been permitted to finish his sentence, after the court told him his time was up, he would have advised the jury the matter of determining the facts was up to them, and stopped. We think the amenities of the occasion called for an acceptance or rejection of the court's offer, with an explanation from counsel that he did not intend to plead for sympathy, rather than a continuance of his address to the jury. If the impression left on the minds of the jurors was detrimental to plaintiff (and we cannot think it was) the fault lies more nearly to plaintiff's door than the court's.

The next four assignments are directed at the ruling of the court permitting the introduction, over the objections of plaintiff that they were immaterial, incompetent, and irrelevant, of certain form records kept by the defendant's employees of their daily activities on its line of railway. The plaintiff had located the accident as happening on the Glendale line. at the Woolsey crossing, on the 10 o'clock at night trip, and had testified that W. A. Langley was the conductor on the car. The records were apparently used not only to refresh the memory of the witness but as independent, original evidence of their contents. They were shown to be the daily routine records, and their authenticity was unquestioned; they were not made with reference to or after knowledge of plaintiff's claim of injury and damage; they were time and trip reports of employees of defendant for April 1, 1922, the date of the alleged injury, or at

28 Ariz.—15

least three of them were. The other was introduced only for the purpose of showing defendant's method of handling the time of defendant's conductors and employees, and had no probative force whatever, and could not have affected the verdict. The question is, Were these reports properly admitted? Their relevancy and materiality cannot be questioned since their tendency was to disprove plaintiff's testimony that Langley was the conductor of the car plaintiff claimed to have been a passenger on when hurt, and to corroborate defendant's witnesses. Nor can it be said that they were hearsay and self-serving. The same question was before the court in *Callihan* v. *Washington Water Power Co.*, 27 Wash. 154, 91 Am. St. Rep. 829, 56 L. R. A. 772, 67 Pac. 697, and, after an extensive investigation of the law, the trip report of the conductor of street railway was held to be competent evidence, the court saying, among other things:

"It is not gainsaid that the conductor could have testified from the report, and that the report could have been used in the presence of the jury for the very purpose of enabling the conductor to testify to the state of facts which the report itself showed when introduced. It is difficult to see how the introduction of the report could work a self-serving purpose greater than could be worked by it on its introduction for the purpose of refreshing the memory of the witness. The object of a legal investigation is the elicitation of the truth, and, to effectuate such object, all facts are admissible in evidence which afford reasonable inferences, or which throw any light upon the subject-matter contested. No competent means of ascertaining the truth should be neglected, much less inhibited; and none are to be decreed incompetent unless such means have been shown by reason and experience to prevent or obscure the truth, instead of discovering it. What are the alleged objections to this testimony? That it is incompetent, irrelevant, immaterial, hearsay, and self-serving. The objections

given to it at the trial were more restricted, but we will discuss them in their fullest scope. Its incompetency depends upon whether it is self-serving or not. That it is relevant and material is beyond question, and it is equally plain that it is not hearsay; for it is in reality the testimony of the witness himself, and not that of another person.''

On the question of failure to introduce such evidence, the court further said:

''Indeed, so pertinent and convincing is this character of testimony in this particular case, that, if it had not been offered, the defendant might have felt that it was in danger of being subjected to a telling criticism before the jury for omitting to produce for its consideration convincing evidence resting peculiarly within its own knowledge, the omission of which would raise the presumption, or at least a strong suspicion, that such evidence, if adduced, would operate to its prejudice.''

In *Strand* v. *Great Northern Ry. Co.*, 101 Minn. 85, 111 N. W. 958, 112 N. W. 987, the court held when reports of employees of a railroad appear to have been made under circumstances precluding any motive for misrepresentation and under conditions calculated to insure accuracy, they might be admitted as original and independent evidence, and when so admitted by the trial court, in the exercise of a sound discretion, the ruling would not be disturbed. It was also said:

''In view of the complicated and extensive business transactions of modern times, it seems to be the tendency of courts to treat as original evidence such entries and reports as are made in the regular course of business, provided they appear free from the charge of fraud, mistake, or self-interest.''

See, also, *St. Louis & S. F. R. Co.* v. *Sutton*, 169 Ala. 389, Ann. Cas. 1912B, 366, 55 South. 989; *Rem-*

*ington Mach. Co.* v. *Wilmington Candy Co.,* 6 Penne. (Del.) 288, 66 Atl. 465.

We conclude that the court did not err in admitting in evidence the trip and time reports of the employees of defendant.

It is next claimed the right of cross-examination was exceeded when the court permitted defendant to ask why he did not present his claim to defendant's agent before bringing suit. As we understand the argument, it is as follows: Because it was not necessary that plaintiff should have first made out and presented his claim of damages before filing suit, defendant had no right to go into the question on plaintiff's cross-examination. Granting that plaintiff's proposition is right, the record shows defendant in its case went into the question fully without any objection from plaintiff. It also shows that plaintiff on cross-examination, in answer to a question, stated without objection that he did not say anything to defendant's employees about his injuries until after suit brought.

In *Birmingham Ry. & Elec. Co.* v. *Wildman,* 119 Ala. 547, 24 South. 548, the court said of a record like the one here:

"Yet testimony tending to show the fact that no notice of or information concerning plaintiff's accident was given to defendant or any of its representatives previous to the institution of this suit, and that the first intimation had by defendant that plaintiff claimed to have been injured was when the summons and complaint were served, was offered by defendant, and received without objection."

In the above case, the court's ruling on the question presented by this assignment upholds the plaintiff's contention, when the testimony sought to be introduced is properly objected to. We have some doubts as to the soundness of the ruling in that regard. We think it is common knowledge that men generally try

to compose their differences before going to court, and where a case arises in which no such step has been taken, even though it was not essential to the right to sue, it seems to us a party, who first gains knowledge of a claim against him, when haled into court on it, should be permitted to show that fact to the court and jury for what it is worth. At all events, in this case the evidence now complained of got into the record without proper objections, and will have to remain.

Lastly, it is assigned that error was committed in permitting the defendant to propound leading questions to Dr. Palmer, a medical expert. We think this matter was entirely within the discretion of the trial court, and that discretion does not seem to have been improperly exercised.

We have very carefully examined all of the assignments in this case, and are convinced that plaintiff's cause was fairly and ably presented, and that no prejudicial error was committed in the course of the trial.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.